[818 NE2d 1146, 785 NYS2d 405]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANA MARIE SANTI, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PETER CORINES, Appellant.

Argued September 9, 2004; decided October 21, 2004

## POINTS OF COUNSEL

*Appellate Advocates,* New York City (*Lynn W.L. Fahey* of counsel), for appellant in the first above-entitled action. I. The proof was insufficient to establish beyond a reasonable doubt that appellant practiced medicine, when the People relied exclusively on the testimony of three lay witnesses as to what they experienced and observed after appellant started intravenous lines in their hands to prove that she administered anesthetic medication to them. (*Jackson v Virginia,* 443 US 307; *People v Kenny,* 30 NY2d 154; *People v Abelson,* 309 NY 643; *Mosberg v Elahi,* 80 NY2d 941; *Fiore v Galang,* 64 NY2d 999; *McDermott v Manhattan Eye, Ear & Throat Hosp.,* 15 NY2d 20; *Koehler v Schwartz,* 48 NY2d 807; *Sawyer v Dreis & Krump Mfg. Co.,* 67 NY2d 328; *Cole v Fall Brook Coal Co.,* 159 NY 59; *Star v Berridge,* 77 NY2d 899.) II. Appellant, charged with administering anesthetic medication on four occasions, was denied her rights to due process and effective assistance of counsel when the court refused to respond meaningfully to a jury question about whether "introducing an IV" would, in and of itself, constitute the practice of medicine, thereby allowing the jury to convict appellant based on a theory that was at odds with the indictment, unsupported by the evidence, and consistent with innocence. (*People v Almodovar,* 62 NY2d 126; *People v Malloy,* 55 NY2d 296; *People v Weinberg,* 83 NY2d 262; *People v Miller,* 6 NY2d 152; *People v Lupo,* 305 NY 448; *People v Gonzalez,* 293 NY 259; *People v Bleau,* 276 AD2d 131; *People v Henning,* 271 AD2d 813; *People v Panetta,* 250 AD2d 710; *People v Pyne,* 223 AD2d 910.) III. Appellant was denied her rights to due process and confrontation when a juror employed at Beth Israel Hospital influenced the other jurors, based on knowledge purportedly gained from her unique work experience, to conclude that appellant was guilty of practicing medicine without a license for merely inserting an intravenous needle into a patient's hand. (*Sheppard v Maxwell,* 384 US 333; *People v Maragh,* 94 NY2d 569; *People v Arnold,* 96 NY2d 358; *United States v Torres,* 128 F3d 38, 523 US 1065; *People v Brown,* 48 NY2d 388; *People v Flores,* 282 AD2d 688.) IV. The hearing court improperly precluded the defense from asking the jurors appropriate questions directly relevant to the *People v Maragh* (94 NY2d 569 [2000]) issue. (*People v Smith,* 59 NY2d 988.)

*Eliot Spitzer, Attorney General,* New York City (*Laurie M. Israel, Michael S. Belohlavek.* and *Robin A. Forshaw* of counsel), for respondent in the first above-entitled action. I. The trial evidence, viewed in the light most favorable to the prosecution, was legally sufficient to establish defendant's guilt of the unauthorized practice of medicine. (*People v Bleakley,* 69 NY2d 490; *Jackson v Virginia,* 443 US 307; *People v Cabey,* 85 NY2d 417; *People v Contes,* 60 NY2d 620; *People v Ford,* 66 NY2d 428; *People v Williams,* 84 NY2d 925; *People v Rossey,* 89 NY2d 970; *People v Norman,* 85 NY2d 609; *People v Hines,* 97 NY2d 56; *People v Cronin,* 60 NY2d 430.) II. The trial court appropriately responded to the jury's note. (*People v Malloy,* 55 NY2d 296; *People v Esquilin,* 236 AD2d 245, 91 NY2d 902; *People v Solis,* 215 AD2d 789; *People v Almodovar,* 62 NY2d 126; *People v Spann,* 56 NY2d 469; *People v Davis,* 223 AD2d 376; *People v Gonzalez,* 293 NY 259; *People v Sanducci,* 195 NY 361.) III. The jurors did not act improperly in reaching their verdict of guilt. (*People v Williams,* 63 NY2d 882; *People v Brown,* 48 NY2d 388; *People v Maragh,* 94 NY2d 569; *People v Testa,* 61 NY2d 1008; *People v Arnold,* 96 NY2d 358; *People v James,* 112 AD2d 380; *People v Thomas,* 170 AD2d 549; *People v Leonti,* 18 NY2d 384; *People v Damiano,* 87 NY2d 477; *People v Arnold,* 96 NY2d 358.) IV. The trial court appropriately exercised its discretion in limiting the scope of questions posed during the juror misconduct hearing. (*Pennsylvania v Ritchie,* 480 US 39; *People v Alomar,* 93 NY2d 239; *People v Hameed,* 88 NY2d 232; *People v Testa,* 61 NY2d 1008; *People v Loliscio,* 187 AD2d 172; *United States v Ianniello,* 866 F2d 540; *People v Leonard,* 252 AD2d 740; *People v Corines,* 295 AD2d 445; *People v Friedgood,* 58 NY2d 467.)

*Mark M. Baker,* New York City, for appellant in the second above-entitled action. I. As a matter of statutory construction, as well as clear legislative intent, a duly licensed physician cannot be prosecuted under Education Law § 6512 (1) as an aider and abettor of a nonlicensed person. (*People v Varas,* 110 AD2d 646; *Remba v Federation Empl. & Guidance Serv.,* 149 AD2d 131, 76 NY2d 801; *People v Mauro,* 147 Misc 2d 381; *People v Allen,* 92 NY2d 378; *Matter of Scotto v Dinkins,* 85 NY2d 209; *Matter of Sutka v Conners,* 73 NY2d 395; *People v Lupinos,* 176 Misc 2d 852; *People v Jelke,* 1 NY2d 321; *People v Ching Fong,* 186 Misc 2d 477; *People v Chavis,* 91 NY2d 500.) II. Because the People's articulated theory of the case was based solely on codefendant Ana Marie Santi's alleged administering of anesthesia, the trial court's refusal to provide a meaningful response to the jury's note, by acknowledging that Santi's conceded insertion of

intravenous lines was not unlawful, constructively amended the indictment and deprived defendants of due process of law. (*People v Iannone,* 45 NY2d 589; *People v Perez,* 83 NY2d 269; *People v Grega,* 72 NY2d 489; *People v Livoti,* 166 Misc 2d 925; *People v Plaisted,* 1 AD3d 805; *People v Kaminski,* 58 NY2d 886; *People v Fata,* 184 AD2d 206, 80 NY2d 974; *People v Powell,* 153 AD2d 54; *People v Spann,* 56 NY2d 469; *People v Gachelin,* 237 AD2d 300.) III. Because the jury clearly convicted defendant based on Ana Marie Santi's conceded insertion of the intravenous needles into the three patients, and because no expert testimony was introduced by the People, the evidence was legally insufficient, as a matter of law, to establish that anesthesia had been administered. (*People v Contes,* 60 NY2d 620; *Matter of Morrissey v Sobol,* 176 AD2d 1147, 79 NY2d 754; *People v Amber,* 76 Misc 2d 267; *People v Cole,* 219 NY 98; *People v Allcutt,* 117 App Div 546, 189 NY 517; *People v Rubin,* 103 Misc 2d 227; *People v Lehrman,* 251 App Div 451; *Engel v Gerstenfeld,* 184 App Div 953; *Jackson v Virginia,* 443 US 307; *Maldonado v Scully,* 86 F3d 32.) IV. Because a certain juror, who was perceived by the other members of the panel as a medical professional, gratuitously shared her assumed expertise with her colleagues with respect to a material issue in the case which was not within the ken of the average juror, and which was treated by the other jurors as if it were evidence, the resulting misconduct severely prejudiced defendant, thereby warranting a new trial. (*People v Maragh,* 94 NY2d 569.)

*Eliot Spitzer, Attorney General,* New York City (*Laurie M. Israel, Caitlin J. Halligan, Michael Belohlavek* and *Robin A. Forshaw* of counsel), for respondent in the second above-entitled action. I. Neither the legislative history of Education Law § 6512 (1) nor rules of statutory construction support defendant's contention that, as a duly licensed physician, he could not be found guilty of the unauthorized practice of medicine. (*Matter of Delmar Box Co. [Aetna Ins. Co.],* 309 NY 60; *Matter of Knight-Ridder Broadcasting v Greenberg,* 70 NY2d 151; *People v Coleman,* 104 AD2d 778; *People v Calkins,* 9 NY2d 77; *People v Irving,* 107 AD2d 944; *People v Evans,* 58 AD2d 919; *People v Merfert,* 87 Misc 2d 803; *People v Prainito,* 97 Misc 2d 66; *People v Reilly,* 85 Misc 2d 702; *People v Brody,* 298 NY 352.) II. The trial court appropriately responded to the jury's note. (*People v Malloy,* 55 NY2d 296; *People v Esquilin,* 236 AD2d 245, 91 NY2d 902; *People v Solis,* 215 AD2d 789; *People v Almodovar,* 62 NY2d 126; *People v Davis,* 223 AD2d 376; *People v Spann,* 56 NY2d 469; *People v Grega,* 72 NY2d 489; *People v Fata,* 184 AD2d 206;

*People v Powell,* 153 AD2d 54; *People v Gachelin,* 237 AD2d 300.) III. The People presented legally sufficient evidence of defendant's guilt. (*People v Bleakley,* 69 NY2d 490; *Jackson v Virginia,* 443 US 307; *People v Cabey,* 85 NY2d 417; *People v Contes,* 60 NY2d 620; *People v Ford,* 66 NY2d 428; *People v Williams,* 84 NY2d 925; *People v Rossey,* 89 NY2d 970; *People v Norman,* 85 NY2d 609; *People v Hines,* 97 NY2d 56; *People v Rivera,* 84 NY2d 766.) IV. The jurors did not act improperly in reaching their verdict of guilt. (*People v Williams,* 63 NY2d 882; *People v Brown,* 48 NY2d 388; *People v Maragh,* 94 NY2d 569; *People v Testa,* 61 NY2d 1008; *People v Arnold,* 96 NY2d 358; *People v James,* 112 AD2d 380; *People v Thomas,* 170 AD2d 549; *People v Leonti,* 18 NY2d 384; *People v Damiano,* 87 NY2d 477; *People v Arnold,* 96 NY2d 358.)

### OPINION OF THE COURT

CIPARICK, J.

We are asked to determine whether a licensed physician is subject to prosecution under Education Law § 6512 (1) for aiding and abetting an unauthorized individual in the unlawful practice of medicine. We conclude that the only reasonable interpretation of the statute does not exempt licensed individuals from criminal prosecution. Additionally, questions regarding sufficiency of the evidence, a response to a jury inquiry and potential juror misconduct are all likewise resolved in the People's favor.

Both appeals here arise out of the same set of facts. Defendant Peter Corines, a licensed medical doctor, owned and operated two medical offices—Surgical Consultants, P.C. and Ambulatory Anesthesia, P.C.—in Queens County, New York. From 1997 to 1998 defendant Ana Marie Santi worked intermittently for Corines at Surgical Consultants. Defendant Santi was licensed to practice medicine in August 1972. Originally, Corines hired Santi as an anesthesiologist, but on March 16, 1998, the Department of Health suspended Santi's license to practice medicine. Despite her suspension, Santi continued to work, in some capacity, at Surgical Consultants. Corines described her as a "medical assistant."

The Attorney General charged each defendant with four counts of unauthorized practice of medicine under Education Law § 6512 (1). The charges stemmed specifically from the treatment of three patients of defendant Corines.

On June 22, 1998, Patient A visited Surgical Consultants to have laser surgery. Defendant Santi entered the operating room

where Patient A was waiting and started an intravenous, or "I.V." line, placing the needle in the patient's right hand. The patient testified she immediately felt relaxed. Corines subsequently entered the room. Patient A then became unconscious and Corines began the surgery.

During the procedure, Patient A awoke twice, nauseous and in pain. The second time she awoke, Corines was not present in the room. To calm her, Santi gave her an injection and laid her down. Ultimately, following the procedure, she was led to a recovery room and fell asleep.

On July 28, 1998, Corines treated Patient B at Surgical Consultants. As Patient B testified, shortly after his arrival there, Santi entered the examination room and directed him to lie on his back. Santi then prepped and cleaned Patient B's right hand, unwrapped an I.V. needle and inserted it into the back of his hand. The needle was connected to tubing which led to an I.V. bag. Patient B said he felt a warm sensation and observed Santi adjust the flow of the liquid. Defendant Corines thereafter entered the room and performed the procedure. After it was complete, Santi returned and removed the needle from Patient B's hand, at which point he said he felt "woozy" and "a bit weak." He received no subsequent medical treatment from Corines.

Patient C testified that on December 4, 1998 she visited Surgical Consultants to have cosmetic eye surgery. Both Corines and Santi were present in the operating room. Corines, situated on Patient C's right side, engaged her in conversation. Santi, standing to the patient's left, inserted an I.V. into her left hand. Immediately after Santi placed the needle in her hand, according to Patient C, she felt the "medication" and fell into unconsciousness. When she awoke both Santi and Corines were in the room. Patient C remained a bit drowsy after she regained consciousness. Santi helped her dress and Patient C ultimately left the office. Following the surgery Patient C's eyelids became infected and she returned to Surgical Consultants on December 30, 1998 for treatment. Again, she testified, both Santi and Corines were present in the operating room. Corines informed her that he was going to give her an injection to help ease the pain. Santi then placed an I.V. line in Patient C's hand. Santi remained on the patient's left side, where the I.V. line was located. Corines remained on Patient C's right side, away from the I.V. line. Patient C felt the medication take effect. Corines then directed Santi to increase the flow of medication, and Patient C fell into unconsciousness.

At trial, the People proceeded on the theory that, in each of the aforementioned instances, Santi engaged in the unauthorized practice of medicine by administering anesthesia, and that Corines aided and abetted her. Defendants, by contrast, claim that the I.V. lines contained either a simple water and glucose, or glucose saline, solution and that the I.V. lines that Santi initiated contained no anesthesia, and that she merely prepared the patients and Corines administered the anesthesia.

Following the People's proof, Corines moved for a trial order of dismissal claiming that the evidence was insufficient to support the charges. Specifically, defendant claimed that no "qualified" individual testified to the use of anesthesia. Santi joined the motion and further noted that even "held in the light most favorable to the People . . . [t]here is no specific proof as to actual drugs or anesthesia having been administered." The court reserved decision, ultimately denying defendants' motion. Following their case, defendants again moved to dismiss.[1] The court again reserved decision. The jury convicted both Santi and Corines on each of the four counts of unauthorized practice in violation of Education Law § 6512 (1). After conducting an investigation that revealed what defendants believed to be misconduct by a juror that improperly influenced other members of the jury, defendants moved to set aside the verdict. The court denied the motion without a hearing and defendants appealed.

The Appellate Division remanded the case for a hearing on the juror misconduct issue (*see People v Corines*, 295 AD2d 445 [2d Dept 2002]; *People v Santi*, 295 AD2d 457 [2d Dept 2002]). Following the hearing, the court again denied defendants' motions. Defendants again appealed.

The Appellate Division, this time addressing the merits, affirmed. The Court conducted both a sufficiency and factual review and ultimately concluded that "[t]he evidence adduced at trial demonstrated that the defendant practiced medicine without a license . . . by administering anesthesia to three patients" (*People v Santi*, 308 AD2d 464, 465 [2d Dept 2003]; *see also People v Corines*, 308 AD2d 457, 457-458 [2d Dept 2003]). The Court further held, with regard to defendant Corines, that he "aided and abetted Santi in her unlicensed practice of medicine" (*Corines*, 308 AD2d at 458). A Judge of

---

1. This second motion to dismiss was actually made the day after summations, just before the judge's charge to the jury.

this Court granted leave to appeal, and we now affirm each of the appeals.

## I. Education Law § 6512

■ We begin our discussion with an analysis of defendant Corines' primary claim assailing the lower courts' interpretation of Education Law § 6512 (1). Specifically, defendant Corines contends that the plain language of section 6512 (1) exempts licensed individuals from criminal prosecution under the statute. We disagree.

Title VIII of the New York State Education Law regulates professional conduct and requires certain enumerated professionals, including physicians, to obtain a license in order to practice such professions lawfully (*see generally* Education Law § 6500 *et seq.*; Education Law §§ 6520, 6521). Education Law § 6512 (1) criminalizes the conduct of any individual who practices any of the enumerated professions in title VIII without authorization. Similarly, it criminalizes the conduct of anyone who aids and abets an unauthorized individual in the unlawful practice of any such profession (*see* Education Law § 6512 [1]; *see also* Penal Law § 20.00).

Specifically, Education Law § 6512 (1) provides that:

> "Anyone not authorized to practice under this title who practices or offers to practice or holds himself out as being able to practice in any profession in which a license is a prerequisite to the practice of the acts, or who practices any profession as an exempt person during the time when his professional license is suspended, revoked or annulled, or who aids or abets an unlicensed person to practice a profession, or who fraudulently sells, files, furnishes, obtains, or who attempts fraudulently to sell, file, furnish or obtain any diploma, license, record or permit purporting to authorize the practice of a profession, shall be guilty of a class E felony."

In interpreting the statute we are guided by a well-settled principle of statutory construction: courts normally accord statutes their plain meaning, but "will not blindly apply the words of a statute to arrive at an unreasonable or absurd result" (*Williams v Williams*, 23 NY2d 592, 599 [1969]; *see also Matter of Rouss*, 221 NY 81, 91 [1917]; *Holy Trinity Church v United States*, 143 US 457, 460 [1892]).

It is equally well settled that, "[i]n implementing a statute, the courts must of necessity examine the purpose of the statute and determine the intention of the Legislature" (*Williams*, 23 NY2d at 598). Indeed, "[t]he primary consideration of the courts in the construction of statutes is to ascertain and give effect to the intention of the Legislature" (McKinney's Cons Laws of NY, Book 1, Statutes § 92 [a], at 177). Legislative intent drives judicial interpretations in matters of statutory construction (*see People v Allen*, 92 NY2d 378, 383 [1998]).

Corines claims that a plain reading of Education Law § 6512 (1) makes clear that only individuals "not authorized to practice under [the Education Law]" may be prosecuted under the statute. Defendant also contends that a comparison of the distinct language used in section 6512 (1) and Education Law § 6512 (2) further supports his reading of the statute and thereby renders subdivision (1) superfluous.[2] Both the trial court and the Appellate Division disagreed with defendant's interpretation, as do we.

While we acknowledge that defendant's interpretation of the statute represents a fair and literal reading of the text, such an interpretation ignores the legislative intent underlying the statute's enactment. If the phrase "not authorized to practice under this title" modified the pronoun "[a]nyone," as defendant urges, the statute would necessarily be applied in an unreasonable manner. For example, defendant's interpretation of the statute would exempt any licensed or authorized individual from criminal prosecution if such person aided or abetted fewer than three people in the unlicensed and unauthorized practice of a profession. Following this reasoning, such a reading would allow for authorized or licensed individuals to fraudulently reproduce and distribute diplomas and licenses, an act similarly proscribed in the statute for lay individuals.

In effect, the statute, read as defendant asks, would enable licensed individuals of all professions under the purview of title VIII to engage in conduct that would otherwise be criminal. We

---

2. Education Law § 6512 (2) provides that
"[a]nyone who knowingly aids or abets three or more unlicensed persons to practice a profession or employs or holds such unlicensed persons out as being able to practice in any profession in which a license is a prerequisite to the practice of the acts, or who knowingly aids or abets three or more persons to practice any profession as exempt persons during the time when the professional licenses of such persons are suspended, revoked or annulled, shall be guilty of a class E felony."

cannot accept that the Legislature intended to enable such conduct, nor do we believe that it intended to create such a disparity in the statute's application. Insofar as we must interpret a statute so as to avoid an "unreasonable or absurd" application of the law, we reject defendant's interpretation (*Williams*, 23 NY2d at 599). Instead, we look to the legislative intent underlying the statute's enactment for guidance. A review of the legislative history makes apparent that only one reasonable interpretation of the statute exists.

Title VIII has a clear regulatory purpose. Specifically, the statute's legislative introduction indicates that it "provides for the regulation of the admission to and the practice of certain professions" (Education Law § 6500). Indeed, it cannot be reasonably contested that the legislation attempts to provide for the safe interaction of the regulated professions and those individuals that would engage their services, namely, the public. Broadly stated, it is a statute clearly designed to promote the public's safety. Allowing licensed physicians to aid and abet unauthorized individuals in the unlawful practice of medicine does not in any way promote the general welfare or otherwise ensure public safety.

A deeper look at the legislative history underlying the enactment of Education Law § 6512 further supports our interpretation. In juxtaposing section 6512, as originally enacted in 1971, with the enactment of section 6512 (2) five years later, it is apparent that the Legislature did not intend to exempt licensed individuals from prosecution under the law for aiding and abetting fewer than three individuals in the unauthorized practice of a profession.

In 1971, as part of a greater revision of the Education Law, the Legislature enacted section 6512. At that time, it consisted of only a single section with wording substantially similar to that of section 6512 (1) as it exists today (L 1971, ch 987, § 2).[3] The unauthorized practice of a profession, originally, was a class A misdemeanor.

---

3. The original 1971 enactment read as follows:
   "§ 6512. Unauthorized practice a crime
   "Anyone not authorized to practice under this title who practices or offers to practice or holds himself out as being able to practice in any profession in which a license is a prerequisite to the practice of the acts, or who aids or abets an unlicensed person to practice a profession, or who fraudulently sells, files, furnishes, obtains, or who attempts fraudulently to sell, file, furnish or obtain any diploma, license, record or permit purporting to au-

In 1976, the Legislature increased the existent sanction by enacting section 6512 (2) (L 1976, ch 689). This section, as evidenced by the extensive legislative discussion that preceded its passage, was enacted primarily to combat the growing problem of massage parlor prostitution in urban areas (*see* Mem of Assembly Member Lipschutz, Bill Jacket, L 1976, ch 689). The Legislature passed the law with the hope that "increasing the penalty in cases where three or more persons are involved in the unauthorized practice of a profession would facilitate law enforcement efforts to eradicate certain evils such as the illicit practice of massage" (*id.*). In 1979 the Legislature, without explanation, raised the penalty for a violation of section 6512 (1) to a class E felony.

The statute's evolution makes obvious that section 6512 (2) was enacted to combat a specific perceived evil, distinct from that covered in section 6512 (1). Again, there was no legislative discussion concerning an alteration in the scope of section 6512 (1). Neither is there any indication that the Legislature intended to exempt a certain class of individuals, licensed professionals, from criminal prosecution for aiding and abetting fewer than three people in the unauthorized practice of a profession. Absent such an express indication, we cannot and will not assume that the Legislature desired such an exemption.

We conclude that Education Law § 6512 (1) does not exempt licensed physicians from prosecution under the statute. To the contrary, section 6512 (1) allows for the prosecution of any individual, licensed or not, that aids and abets an unauthorized individual in the practice of medicine. Defendant Corines fits neatly within the statute's scope. Furthermore, under the accessorial liability statute, he is likewise liable as he knew defendant Santi was not authorized to practice medicine, and he "intentionally aided" her in the practice of medicine on his patients through the administration of anesthesia (*see* Penal Law § 20.00).[4] Corines's argument here is thus without merit. We next turn to the sufficiency claim raised by both defendants.

---

thorize the practice of a profession, shall be guilty of a class A misdemeanor" (L 1971, ch 987, § 2).

4. Penal Law § 20.00 provides that "[w]hen one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct."

## II. Defendants' Sufficiency and Expert Witness Claims

Evidence is legally sufficient to support a conviction where, "if accepted as true, [it] would establish every element of an offense charged and the defendant's commission thereof" (CPL 70.10 [1]). This Court's role on sufficiency review is limited to determining whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (*Jackson v Virginia,* 443 US 307, 319 [1979]; *see also People v Contes,* 60 NY2d 620, 621 [1983]). Ultimately, so long as the evidence at trial establishes "any valid line of reasoning and permissible inferences [that] could lead a rational person" to convict, then the conviction survives sufficiency review (*People v Williams,* 84 NY2d 925, 926 [1994]).

Both defendants Corines and Santi contend that the evidence at trial was insufficient to support Santi's conviction for the unauthorized practice of medicine and Corines' conviction for aiding and abetting such unauthorized practice. They focus their claim on the People's failure to call an expert witness to testify to the effects of anesthesia. They assert on appeal that, in the absence of expert testimony establishing a causal connection between the sensations each of the complaining patients experienced and the typical effects attendant to the administration of anesthesia, the evidence at trial was insufficient to support their convictions.

Expert testimony is properly admitted "when it would help to clarify an issue calling for professional or technical knowledge . . . beyond the ken of the typical juror" (*De Long v County of Erie,* 60 NY2d 296, 307 [1983]). Admission of expert testimony is a matter largely left to the discretion of the trial court (*see People v Brown,* 97 NY2d 500, 505 [2002]).

While expert testimony may be properly admitted in certain cases, it is not always required to prove a particular crime (*see e.g. People v Cratsley,* 86 NY2d 81, 87-88 [1995]). Additionally, an expert is not necessarily required to testify to the effects of a particular drug; lay testimony on this issue suffices in some instances (*see People v Kenny,* 30 NY2d 154, 156-157 [1972]). Simply, expert testimony is used to "aid a lay jury in reaching a verdict" (*People v Taylor,* 75 NY2d 277, 288 [1990]). Expert testimony was not required in this case.

We recognized long ago that "modern juries are not bereft of education and intelligent persons who can be expected to apply

their ordinary judgment and practical experience" (*Havas v Victory Paper Stock Co.*, 49 NY2d 381, 386 [1980]). The administration of anesthesia, a commonly employed means of relieving pain during surgical procedures, is not a matter so foreign or esoteric as to require an expert explanation. Jurors, equipped with their everyday knowledge and experience, could reasonably have concluded that the sensations and experiences described by each of the patient-witnesses were caused by the administration of anesthesia. Under the circumstances of this case, on this record, it is clear that the jury did not need expert assistance in determining whether Santi administered anesthesia to each of the complaining patients.

The three patient-witnesses described in detail their experiences with defendants. Each testified regarding a warm sensation following Santi's introduction of the I.V. line. Both Patient A and Patient C fell into unconsciousness shortly after Santi started the respective I.V. line. After Corines directed Santi to increase the flow of the I.V., Patient C immediately lost consciousness. When one patient regained consciousness, she needed assistance dressing, and she remained weak and semiconscious for a significant period following the procedure.

While Patient B did not lose consciousness, his medical records stated that he received sedatives to ease his pain. He recalled a warm, burning sensation that followed Santi's insertion of the I.V. prior to Corines ever entering the room. Following the procedure Patient B was weak and "woozy." He was unable to rise up off the operating table without holding on to something for support. This evidence, both direct and circumstantial, supported the People's theory.

Furthermore, defendant Corines' own testimony, and his own medical records, proved helpful to the People (*see generally People v Hines*, 97 NY2d 56, 61 [2001]). Corines described anesthesia as a type of pain reliever, and he described the manner in which anesthesia is typically administered, either through an I.V. line or via direct injection. Additionally, Corines confirmed that each of the patient-witnesses received anesthesia, and he admitted that defendant Santi, his "medical assistant," attended each of the four procedures.

Reviewing the evidence in the light most favorable to the People, the jury could have used a clear and valid line of reasoning to convict Santi and, consequently, Corines as acting in concert on each of the four counts of the indictment.

### III. Jury Inquiry and the Trial Court's Response

CPL 310.30 provides, in pertinent part, that during deliberations, upon a jury's request for clarification, "the court must direct that the jury be returned to the courtroom and, after notice to both the people and counsel for the defendant, and in the presence of the defendant, must give such requested information or instruction as the court deems proper." The court does not have discretion in deciding whether to respond (*see People v Almodovar*, 62 NY2d 126, 131 [1984]; *People v Malloy*, 55 NY2d 296, 301 [1982]; *People v Gonzalez*, 293 NY 259, 262 [1944]). Moreover, the court, in response, "must give meaningful supplemental instructions" (*Malloy*, 55 NY2d at 301). Therefore, while a trial court is without discretion in deciding whether to respond, the court does have discretion as to the substance of the response.

■ Simple reiteration of an original instruction may, under appropriate circumstances, constitute a meaningful response sufficient to satisfy the statutory mandate (*see id.* at 298). Specifically, when the original instruction is accurate and "[w]here the jury expresses no confusion [regarding the original charge]," a simple reiteration of the original instruction suffices as a meaningful response (*id.* at 302). This case gives rise to the unique circumstances under which a rereading of the original charge suffices.

The trial court originally instructed the jury, in pertinent part, that:

> "in order for you to find the defendant Ana Marie Santi guilty of the crime of practicing medicine without a license as charged in the four counts of this indictment, the People are required to prove from all of the evidence in the case beyond a reasonable doubt each of the following three elements."

In describing the third element, the trial judge instructed the jury that the People must prove defendant Santi "knowingly practiced medicine upon [each patient] through the administration of anesthesia."

During deliberations the jury inquired whether "[u]nder the conditions of Dr. Santi's suspension as performing the duties of a medical assistant, was Dr. Santi permitted to introduce an I.V. to a patient?" The trial judge, after hearing both parties, responded to the note by rereading the original instruction,

including the language specifically requiring proof that Santi administered anesthesia. While it might have been better to address the note more directly, here rereading the original, proper instruction was sufficient to convey the appropriate message to reasonable jurors. The jury's note had not expressed confusion about the meaning of that instruction. We therefore conclude that the trial judge provided a meaningful response to the jury's inquiry.

## IV. Juror Misconduct

Finally, defendants claim that during deliberations a juror improperly influenced the others. The juror worked at a hospital as a patient care associate. Defendants claim that she asserted her medical expertise, became an "unsworn witness" in the jury room and improperly swayed the jury to convict.

Firstly, we are presented with findings of fact made by Supreme Court on remittitur and affirmed by the Appellate Division. Therefore, our review here is limited to whether there is any "possible view of the evidence that would support the determination" below (*People v Damiano*, 87 NY2d 477, 486 [1996]). Clearly, there is record support for the trial court's factual findings and refusal to set aside the verdict based on juror misconduct.

Juror misconduct constitutes reversible error where "(1) jurors conduct[ ] personal specialized assessments not within the common ken of juror experience and knowledge (2) concerning a material issue in the case, and (3) communicat[e] that expert opinion to the rest of the jury panel with the force of private, untested truth as though it were evidence" (*People v Maragh*, 94 NY2d 569, 574 [2000]). It would be improper for a juror to "engage in experimentation, investigation and calculation that necessarily rely on facts outside the record and beyond the understanding of the average juror" (*People v Arnold*, 96 NY2d 358, 367 [2001]). Jurors are not, however, required to "check their life experiences at the courtroom door" (*id.* at 366).

The record indicates that the juror, while perhaps assertive, was not an "expert." Her experiences in the medical field were limited. Moreover, she did not conduct any experiment or investigation that was later used to influence the jury. Instead, the record makes clear that she merely gave her lay opinions regarding the introduction of an I.V. line, drawing on both her

life experiences and the trial evidence. This was proper. These record facts support the conclusion below that the juror's participation in the deliberations did not rise to the level of juror misconduct.

Defendants' remaining claims are without merit.

Accordingly, in each case, the order of the Appellate Division should be affirmed.

Chief Judge KAYE and Judges G.B. SMITH, ROSENBLATT, GRAFFEO, READ and R.S. SMITH concur.

In each case: Order affirmed.