[870 NE2d 118, 838 NYS2d 800]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JEFFREY KOZLOW, Respondent.

Argued March 20, 2007; decided April 26, 2007

## POINTS OF COUNSEL

*Janet DiFiore, District Attorney,* White Plains (*Robert K. Sauer* and *Anthony J. Servino* of counsel), for appellant. I. Defendant's textual communications to "JohnInYonkers914" depicted obscene material within the meaning of the statute he was convicted of violating. (*Chevron U.S.A. Inc. v Natural Resources Defense Council, Inc.,* 467 US 837; *People v Owusu,* 93 NY2d 398; *People v Gallicchio,* 189 Misc 2d 182; *People v Foley,* 94 NY2d 668; *People v Barrows,* 273 AD2d 246; *Miller v California,* 413 US 15; *American Libs. Assn. v Pataki,* 969 F Supp 160.) II. If this Court should find that messages containing textual communications only are encompassed by Penal Law § 235.22, the statute would not be unconstitutionally vague. (*People v Skya,* 6 Misc 3d 188; *People v Shack,* 86 NY2d 529; *Rowan v Post Office Dept.,* 397 US 728; *Broadrick v Oklahoma,* 413 US 601; *Kovacs v Cooper,* 336 US 77; *People v Dietze,* 75 NY2d 47; *People v Bright,* 71 NY2d 376; *Colautti v Franklin,* 439 US 379; *United States v Harriss,* 347 US 612; *People v Nelson,* 69 NY2d 302.) III. Defendant's claim that the prosecution improperly amended its theory of prosecution in contravention of the indictment and the bill of particulars finds no support in the record. (*People v Green,* 96 NY2d 195; *People v Charles,* 61 NY2d 321; *People v Grega,* 72 NY2d 489; *People v Roberts,* 72 NY2d 489; *People v Rivera,* 84 NY2d 766.)

*Stillman, Friedman & Shechtman, P.C.,* New York City (*Nathaniel Z. Marmur* of counsel), for respondent. I. The communications did not "depict" any prohibited conduct because they consisted solely of words and nonobscene pictures. (*People v Foley,* 257 AD2d 243, 94 NY2d 668; *American Civ. Libs. Union v Reno,* 929 F Supp 824, 521 US 844; *People v Stuart,* 100 NY2d 412; *People v Shack,* 86 NY2d 529; *New York v Ferber,* 458 US 747; *Ginsberg v New York,* 390 US 629; *Bookcase, Inc. v Broderick,* 18 NY2d 71; *People v Bookcase, Inc.,* 14 NY2d 409; *Matter of Marx v Bragalini,* 6 NY2d 322.) II. To construe "depict" to include written descriptions would make Penal Law § 235.22 void for vagueness as applied here under the New York and United States Constitutions. (*People v Barrows,* 273 AD2d 246; *People v Bright,* 71 NY2d 376; *United States v Harriss,* 347 US 612; *People v Garson,* 6 NY3d 604; *People v Bakolas,* 59 NY2d 51.) III. The indictment was constructively amended. (*People v*

*Perez,* 83 NY2d 269; *People v Iannone,* 45 NY2d 589; *People v Charles,* 61 NY2d 321; *People v Kaminski,* 58 NY2d 886; *People v Jean,* 146 AD2d 803; *People v AJS Merchandising,* 162 AD2d 990; *People v Greaves,* 1 AD3d 979; *People v Brown,* 221 AD2d 353; *People v Chicas,* 204 AD2d 476; *People v Taplin,* 1 AD3d 1044.)

*Andrew M. Cuomo, Attorney General,* New York City (*Barbara D. Underwood, Daniel Smirlock* and *Megan P. Davis* of counsel), amicus curiae. Penal Law § 235.22 applies to purely textual communications. (*American Libs. Assn. v Pataki,* 969 F Supp 160.)

*Michael E. Bongiorno, District Attorney,* New York City (*Karen Schlossberg* and *Mark Dwyer* of counsel), for New York State District Attorneys Association, amicus curiae. Penal Law § 235.22 prohibits indecent Internet communications attempting to lure minors into sexual encounters whether or not the communications include visual imagery. (*People v Garson,* 6 NY3d 604; *American Libs. Assn. v Pataki,* 969 F Supp 160; *People v Foley,* 94 NY2d 668; *People v Gallicchio,* 189 Misc 2d 182; *People v Skya,* 6 Misc 3d 188.)

### OPINION OF THE COURT

Pigott, J.

We hold that a defendant charged with attempted dissemination of indecent material to minors in the first degree under Penal Law § 110.00 and former § 235.22 (L 1996, ch 600, § 6) may properly be convicted under that statute even though his communications contained no nude or sexual images.

### I.

On March 4, 2004, defendant Jeffrey Kozlow entered an Internet chat room and, by instant messaging, approached a person with the screen name "JohnInYonkers914," who immediately gave his age as 14. "[I]'m 42; [I]'m into younger guys," Kozlow wrote, "u into guys my age?" (Punctuation added.) Unbeknownst to Kozlow, JohnInYonkers914 was an undercover investigator. Later that month, the two exchanged photographs of themselves, fully clothed, the investigator sending photographs of an adolescent boy. Kozlow asked JohnInYonkers914 about his sexual orientation and, repeatedly, about masturbation. In April, Kozlow began to describe, in the text of his instant messages, sexual acts he enjoyed. He also described various imagined sexual encounters they might have, involving

oral and anal sex. Kozlow did not, however, send any pornographic images or other pictorial representations of nudity or sex.

In May, the two made plans to meet in Westchester County. Although Kozlow repeatedly told JohnInYonkers914 that at first they were "just going to talk," he also mentioned that he would "get a room" if the two decided to have sex, and he described sexual acts in which they might engage. Kozlow cancelled these plans but, in June, after JohnInYonkers914 said that his parents had given him permission to travel into Manhattan by himself, Kozlow quickly suggested a meeting. The two agreed to meet at 11:30 A.M. on June 28, 2004 at a magazine store at Grand Central Terminal. Kozlow was arrested leaving the store at 11:28.

Kozlow was charged with five counts of attempted dissemination of indecent material to minors in the first degree (Penal Law § 110.00, former § 235.22). His bench trial commenced in County Court in May 2005. The evidence primarily consisted of transcripts of the instant messages and of e-mails. Kozlow moved to dismiss the charges, arguing, among other things, that Penal Law § 235.22 applied only when a defendant's communication to a minor involved indecent pictorial representations. County Court denied Kozlow's motion, and ultimately convicted him on all counts.

The Appellate Division reversed defendant's conviction and dismissed the indictment, reasoning that Kozlow's communications could not have "depicted" sexual conduct within the meaning of Penal Law § 235.22 (1), since they included no visual, sexual images (31 AD3d 788 [2006]). A Judge of this Court granted leave to appeal, and we now reverse.

## II.

In 1996, the New York State Legislature introduced statutes criminalizing the transmission of indecent material to minors over the Internet. Former Penal Law § 235.22 provided that, to be guilty of disseminating indecent material to minors in the first degree, a person must intentionally communicate by computer with a minor "knowing the character and content of the communication which, in whole or in part, *depicts* actual or simulated nudity, sexual conduct or sado-masochistic abuse, and which is harmful to minors" (former Penal Law § 235.22 [1]

[emphasis added]).[1] Additionally, the person must use the computer communication to lure a minor "to engage in sexual intercourse, oral sexual conduct or anal sexual conduct, or sexual contact with him, or to engage in a sexual performance, obscene sexual performance, or sexual conduct for his benefit" (former Penal Law § 235.22 [2] [L 2003, ch 264, § 29]). This first-degree offense was designated a class D felony.

We begin with a brief observation about the ordinary meaning of the word "depict." While one meaning of "depict" is *represent in a picture,* and the etymology of the word lies in the Latin "pingere" ("to paint"), the word "depict" also has a standard sense of *represent or portray in words* and it has been used in that manner since the colonial era (*see* 4 Oxford English Dictionary 477 [2d ed 1989]).

Turning to legislative intent, the purpose of the New York State Legislature in enacting Penal Law § 235.22 in 1996 (*see* L 1996, ch 600, § 6) may be discerned from the range of concerns expressed by its proponents and sponsors. In the mid-1990s, law enforcement officials and legislators were alarmed by the increasing use of computers by pedophiles to contact minors. Lawmakers proposed section 235.22 partly in response to the highly publicized case of Alan Paul Barlow (*see* Governor's Mem approving L 1996, ch 600, 1996 McKinney's Session Laws of NY, at 1901; Letter of Westchester County District Attorney to Governor Pataki, Feb. 13, 1996, Bill Jacket, L 1996, ch 600, at 25). Posing as a 13-year-old boy, Barlow, a 51-year-old resident of Seattle, Washington, wrote sexually explicit e-mails to a 14-year-old girl in Westchester County. He was arrested in New York in June 1994 after arranging to meet the girl near her home, and was charged with endangering the welfare of a child—a misdemeanor.[2] The sponsors of the 1996 legislation, explaining how such incidents justified the proposed laws, described the e-mail communications they sought to criminalize

---

1. In March 2007, Penal Law § 235.22 (1) was amended to add the words "or describes, either in words or images" directly after the word "depicts."

2. See Dennis Hevesi, *Seattle Man Charged In Sex Conversations On Electronic Mail,* New York Times, June 26, 1994, sec 1, at 28; Elsa Brenner, *Crime Moves Into New Arenas And Justice Rushes to Catch Up,* New York Times, Sept. 18, 1994, sec 13 (Westchester), at 1; Kim Murphy, *Youngsters Falling Prey to Seducers in Computer Web,* Los Angeles Times, June 11, 1995, sec A, at 1; Seattle Police Sex or Kidnapping Offender Information Bulletin regarding Alan Paul Barlow, Sept. 14, 2000, <http://web1.seattle.gov/Police/SexOffender/DataFiles/BarlowAlanP.pdf>, cached at <http://www.courts.state.ny.us/reporter/webdocs/BarlowAlanP.pdf>.

as predominantly textual. "Typically, the pedophile, posing as a minor, makes contact, wins the confidence of the minor and slowly begins to draw the victim into *discussions of sex and sexuality.*" (Senate Introducer's Mem in Support of L 1996, ch 600, 1996 McKinney's Session Laws of NY, at 2524 [emphasis added].)

We therefore reject defendant's contention that the Legislature intended to limit the scope of Penal Law § 235.22 to sexual predators who use images, rather than words, to lure minors. Nowhere in the history of the statute do we find evidence of such a narrow intent. On the contrary, it is clear that the legislators intended to criminalize the activities of adults who engage minors in "sexually infused *communication*" (Senate Introducer's Mem in Support at 2524 [emphasis added]).

Moreover, the Legislature was surely aware that a sexually explicit text may be used as a means of seduction just as effectively as a sexual image. The lawmakers observed that pedophiles first try to win the confidence of their victims (Senate Introducer's Mem in Support at 2524); they could not have thought that this process was limited to the transmission of pornographic images. Indeed, the logic of communication dictates just the opposite—that images alone would not enable the sender to entice a minor to a meeting. Defendant's argument, therefore, that the Legislature was seeking to criminalize the luring of a child into a sexual encounter by transmission of visual images, while leaving a loophole allowing a predator to lure a child into sex through transmission of words alone, falls of its own weight. As the Attorney General points out in his amicus brief urging reversal, such an interpretation would render the law almost useless; a recent national study suggests that only 18% of perpetrators of Internet-related sex offenses against minors transmitted sexual pictures to their victims (*see* Janis Wolak et al., *Internet-initiated Sex Crimes against Minors: Implications for Prevention Based on Findings from a National Study*, 35 J Adolescent Health 424.e11, 424.e16-424.e17 [2004], available at <http://www.unh.edu/ccrc/pdf/CV71.pdf>).

Defendant alternatively contends that the Legislature may have intended a limited proscription of transmission of visual depictions of sexuality to minors because of concern that the statute would run afoul of constitutional challenges if it applied to purely textual communications. We note, however, that the sponsors of the bill expressly mentioned several respects in which it was drafted so as to be "consistent with the recently

passed Federal Communications Decency Act and Constitutional requirements" (Senate Introducer's Mem in Support at 2524). For example, the bill provides a defense for those who make good faith efforts to avoid contacts with minors, and the sponsors note that the accompanying definition of "harmful to minors" was intended to be consistent with Federal law (id. at 2524-2525).[3] But nowhere do any legislators suggest that the word "depict" was chosen to ensure consistency with Federal law.

It is certainly true that the preexisting language of Penal Law § 235.21 distinguishes between a "visual representation or image . . . which depicts nudity, sexual conduct or sado-masochistic abuse" (Penal Law § 235.21 [1] [a]) and "explicit and detailed verbal descriptions or narrative accounts of sexual excitement, sexual conduct or sado-masochistic abuse" (Penal Law § 235.21 [1] [b]). The words "depicts . . . nudity, sexual conduct or sado-masochistic abuse" were repeated in the 1996 amendments, in both section 235.21 (3) and section 235.22 (1), and the corresponding language regarding verbal descriptions and narrative accounts was not used. But we cannot conceive that this outcome was the result of a deliberate decision to limit the scope of the statute to pictorial representations, at the time that it was being expanded into the multifaceted area of computer communications. On the contrary, we think it far more likely that legislators considered the word "depict" broad enough in meaning to cover a wide range of indecent materials.

Nor can defendant find refuge in *People v Foley* (94 NY2d 668 [2000], *cert denied* 531 US 875 [2000]), in which we upheld the constitutionality of Penal Law § 235.22.[4] In that case, defendant sent pictures of minors engaging in sexual acts to a person he believed to be a 15-year-old girl, whom he met in an Internet chat room. Accordingly, the language of our opinion turned more

---

3.  " 'Harmful to minors' means that quality of any description or representation, in whatever form, of nudity, sexual conduct, sexual excitement, or sado-masochistic abuse, when it:

"(a) Considered as a whole, appeals to the prurient interest in sex of minors; and

"(b) Is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable material for minors; and

"(c) Considered as a whole, lacks serious literary, artistic, political and scientific value for minors." (Penal Law § 235.20 [6].)

4.  The Appellate Division cited *Foley* (94 NY2d at 681) in support of its holding.

than once to pedophiles' use of sexual images to lure minors (*see e.g. id.* at 681). But *Foley* does not stand for the proposition that a sexual predator must send his target sexual images in order to violate Penal Law § 235.22. Indeed, the statute was correctly construed to criminalize the use of any "sexually explicit *communications*" intended to lure children into sexual conduct (94 NY2d at 674 [emphasis added]).

Finally, we reject defendant's theory that Penal Law § 235.22 is void for vagueness if the word "depict" is interpreted to include textual descriptions. A legislative decision to use language that is imprecise and open-ended "does not render a statute fatally vague if that language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices' " (*People v Shack*, 86 NY2d 529, 538 [1995], quoting *United States v Petrillo*, 332 US 1, 8 [1947]). We see no reason to depart from our holding in *Foley* that the statute is not unconstitutionally vague (94 NY2d at 680-682 [upholding section 235.22 against a vagueness challenge to subdivision (2)]).

Because the Appellate Division reversed on the basis of its ruling on the "depiction" issue, it saw no need to address the parties' other contentions. Accordingly, the order of the Appellate Division should be reversed and the case remitted to that Court for consideration of the facts and issues raised but not determined on the appeal to that Court.

SMITH, J. (dissenting). We all agree that what defendant did should be a felony. But I conclude that, unfortunately, the Legislature did not make it one until it amended the statute in 2007. I therefore dissent.

The primary meaning of "depict," in every dictionary I have consulted, is to represent by a picture (Merriam-Webster's Collegiate Dictionary 310 [10th ed 1993]; Random House-Webster's College Dictionary 363 [1991]; 4 Oxford English Dictionary 477 [2d ed 1989]). As all these dictionaries say, "depict" can also be used as a synonym for "describe," but if the Legislature intended to reach both pictures and words the obvious way to do so was to say "depicts or describes." Elsewhere in article 235 of the Penal Law, the Legislature used "depicts" alone when it was referring only to visual representations (Penal Law § 235.21 [1] [a] ["picture, photograph . . . or similar visual representation . . . which depicts"]); "descriptions" when it referred to purely verbal material (Penal Law § 235.21 [1] [b] ["verbal

descriptions or narrative accounts"]); and "depicts or describes" and "depiction or description" when it referred to both (Penal Law § 235.00 [1] ["depicts or describes in a patently offensive manner"; § 235.00 [6] ["explicit depiction or description" of certain conduct]).

From a reading of article 235 as a whole, it seems fairly clear that the Legislature was using "depicts" in its primary, narrow sense. In construing a criminal statute, we should not give it a broader interpretation than the one a reasonable reader would draw from its text (*see People v Case*, 42 NY2d 98, 101 [1977]; *People v Gottlieb*, 36 NY2d 629, 632 [1975]). It is true, as the majority points out (majority op at 558-559), that comments in the legislative history—not specifically focused on the meaning of "depicts"—show that some of the legislation's supporters thought it would reach nonpictorial material, but this does not seem to me enough reason to reject the apparent meaning of the statute itself.

If anything, I would give more weight to the expressed views of lawyers for the State who argued, in litigation that followed the statute's enactment, that "depicts" referred only to images, not to words. The State took this position in two cases, in which it defended the constitutionality of two sections of the 1996 legislation directed at the use of the Internet by sexual predators. The State plainly thought then that the more narrowly the statutes were read, the likelier they were to be upheld. Thus the Attorney General in *American Libs. Assn. v Pataki* (969 F Supp 160 [SD NY 1997]), and both the Attorney General and the District Attorney in *People v Foley* (94 NY2d 668 [2000]), argued that the legislation covered only images.

The State's arguments had mixed success. Penal Law § 235.21, which prohibits disseminating certain material to a minor even where there is no attempt to engage the minor in sexual activity, was invalidated by the Federal District Court in the *American Libraries* case, and is no longer enforced. In the course of its ruling, the District Court concluded—mistakenly, I believe—that the meaning of "depicts" was not as narrow as the Attorney General said (969 F Supp at 178 n 9). On the other hand, in *Foley*, we held that the statute involved here, Penal Law § 235.22, was constitutional, and in doing so we seemed to adopt the State's narrow reading of "depicts." Four times in the *Foley* opinion, we described the statute as prohibiting the dissemination of "images" (94 NY2d at 676 ["prohibiting the dissemination of graphic images"], 681 ["dissemination of harmful, sexual

images"], 682 ["dissemination of a certain category of images"], 684 ["transmission of sexually graphic images"]). I acknowledge that our decision in *Foley* did not turn on the distinction between images and words, and I do not question the State's right to change its mind. But its switch does not inspire confidence in the interpretation it now adopts.

The majority argues that the Legislature could not have intended a narrow meaning of "depicts," because that meaning would interfere with the legislative purpose. But the Legislature had more than one purpose in 1996; and its purposes may have contradicted each other, because the Legislature chose to use identical words in describing two significantly different crimes.

The 1996 legislation added computer transmissions to the definition of the existing offense of disseminating indecent material to minors, and added "in the second degree" to that offense's title. The second degree offense may be committed just by knowing dissemination, without any attempt to induce conduct by the minor (Penal Law § 235.21). The same legislation also created the new offense of disseminating indecent material to minors in the first degree (Penal Law § 235.22), the crime at issue here, which can be committed only by one who "importunes, invites or induces a minor to engage in" certain sexual conduct. Sending a communication that "depicts" particular material is an element of both offenses (Penal Law § 235.21 [3]; § 235.22 [1]).

The statute creating the new form of the second degree offense stood, as the *American Libraries* case was to show, on shaky constitutional ground, and the Legislature had every reason to write it as narrowly as possible in the hope of withstanding a challenge. There was no reason to be equally cautious in defining the first degree crime; indeed, I cannot see why it should not be a felony to invite a minor to have sex by means of *any* electronic communication (though even the newly-amended 2007 version of the statute does not go that far). I do not know why the 1996 Legislature chose to use the same narrow language in defining the first-degree crime that it did in defining the lesser one. But I do not believe that language reaches the admittedly heinous behavior of defendant in this case, and I think the Appellate Division was right to reverse his conviction.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO and READ concur with Judge PIGOTT; Judge SMITH dissents and votes to affirm in a separate opinion in which Judge JONES concurs.

Order reversed and case remitted to the Appellate Division, Second Department, for consideration of the facts (CPL 470.25 [2] [d]; 470.40 [2] [b]) and issues raised but not determined on the appeal to that Court.