THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JEFFREY KOZLOW, Appellant. [851 NYS2d 577]—

Appeal by the defendant from a judgment of the County Court, Westchester County (Alessandro, J.), rendered July 27, 2005, convicting him of attempted disseminating indecent material to minors in the first degree (five counts), after a nonjury trial, and imposing sentence. By decision and order of this Court dated July 25, 2006, the judgment was reversed (*see People v Kozlow*, 31 AD3d 788 [2006]). By opinion of the Court of Appeals dated April 26, 2007, the decision and order of this Court was reversed and the matter was remitted to this Court for further proceedings (*see People v Kozlow*, 8 NY3d 554 [2007]).

Ordered that the judgment is affirmed.

The 42-year-old defendant had multiple communications via e-mail with "JohnInYonkers," an individual that the defendant believed to be a 14-year-old boy. The two initially met in an Internet chat room. In fact, "JohnInYonkers" was an undercover investigator employed by the High Technology Crimes Bureau of the Westchester County District Attorney's Office, which investigates crimes against children online.

The defendant described in various e-mail communications. the sexual acts he would perform upon "JohnInYonkers." The communications included those of April 14, April 23, May 13, and May 24, 2004. On April 7, 2004 the defendant, presumably the older of the two Internet correspondents, offered to teach "JohnInYonkers," presumably the younger of the two, about specific sexual behavior. During the communication of May 13, 2004 the defendant inquired whether "JohnInYonkers" was a police officer, and the following day transmitted to "JohnInYonkers" a train schedule so that the two could meet in New York City. While the defendant stated on various occasions that his initial meeting with "JohnInYonkers" would be limited to conversation, the defendant also indicated at other times that, after the initial meeting, he and "JohnInYonkers" would "take it from there," get a room, and thereafter see one another as much as "JohnInYonkers" wanted.

Ultimately, on June 28, 2004 the defendant was arrested after walking to the pre-arranged location at Grand Central Terminal in Manhattan at the approximate time that "JohnInYonkers" was scheduled to arrive for a first meeting.

Viewing the evidence in the light most favorable to the People, as we must (*see People v Contes*, 60 NY2d 620, 621 [1983]), we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt of each count of attempted disseminating indecent material to minors in the first degree. The defendant's e-mails knowingly communicated sexual depictions, by which he importuned, invited, or induced sexual contact with someone that he believed to be a minor (*see* Penal Law § 235.22).

The defendant maintains that the evidence shows that he merely intended to engage in an online fantasy, and not to lure a minor into sexual contact. However, given the defendant's online descriptions of the physical sexual contact he would perform with "JohnInYonkers," his transmittal of a train schedule, his effort to meet "JohnInYonkers" at a designated date and time at Grand Central Terminal, and other evidence contained in the electronic communications, we are satisfied that the verdict was not against the weight of the evidence. The resolution of issues of credibility is primarily a matter to be determined by the trier of fact, which saw and heard the witnesses, and its determination should be accorded great deference on appeal (*see People v Romero*, 7 NY3d 633, 644-645 [2006]; *People v Mateo*, 2 NY3d 383, 410 [2004], *cert denied* 542 US 946 [2004]). Our dissenting colleague, in reviewing the weight of the evidence, overlooks the predatory seduction evidenced by the defendant's ongoing pattern of statements and activities. The weight of the objective evidence is such that the trier of fact could resolve conflicting inferences against those of the defendant's arguments that are based upon self-serving assertions as to his subjective intent (*see People v Rochester*, 168 AD2d 519, 520 [1990]).

Our dissenting colleague argues that the People impermissibly altered the theory of the prosecution during summation from importuning, inviting, or inducing sexual "contact," as alleged in the indictment, to sexual "conduct" for his benefit, which was not alleged in the indictment, and that the trial court, in overruling the defendant's objection on this ground, did not expressly disavow a "conduct" theory upon finding the defendant guilty. However, a court is presumed in a nonjury trial, as here, to have considered only competent evidence in reaching its verdict (*see People v Sims*, 127 AD2d 805, 806 [1987]). Indeed, "[a] Judge is deemed uniquely capable of distinguishing those issues properly presented to him [or her] from those not" (*People v Reyes*, 116 AD2d 602, 603 [1986]) so as to warrant this presumption (*see People v Marino*, 21 AD3d 430, 432 [2005], *cert denied* — US —, 126 S Ct 2930 [2006]) [no danger that

conviction rested upon prosecutor's fallacious summation]. This is not a case such as *People v Haines* (139 AD2d 591 [1988]), where the trial court not only overruled an objection, but also made improper statements reinforcing the prosecutor's comments, nor is this a case where the verdict necessarily relies upon evidence unrelated to the specific allegations of the indictment, as in *People v Rodriguez* (164 AD2d 832 [1990]). To the contrary, the trial court in this instance expressly stated that it was familiar with and bound by the contents of the case file and would "make a decision based upon what is *charged* in [*sic*] the evidence submitted in the trial" (emphasis added) (*see People v Mitchell S.*, 151 Misc 2d 208, 212 [1991]). Since the trial court expressly bound itself to the indictment in the case file and to the evidence relating to the charges, any error in overruling the defendant's objection is of no consequence.

The defendant's remaining contentions are without merit. Rivera, Krausman and Dillon, JJ., concur.

Crane, J.P. (dissenting and voting to reverse the judgment of conviction, on the law and the facts, and to dismiss the indictment): During summations in this bench trial, the prosecutor urged the trial court to convict the defendant on a theory that was not charged in the indictment. When the defendant objected and clearly stated the ground for his objection, the court overruled the objection, opaquely adding later that it was bound by the case file and would make a decision based on the evidence. Because the prosecutor's change in theory violated the defendant's constitutional right to be prosecuted by indictment voted by a grand jury (*see* NY Const, art I, § 6; *People v Perez*, 83 NY2d 269, 273 [1994]; *People v Grega*, 72 NY2d 489, 495 [1988]), I vote to reverse his conviction, and, because any conviction on the theory that was charged in the indictment was against the weight of the evidence, I vote to dismiss the indictment.

Penal Law § 235.22 (disseminating indecent material to minors in the first degree) provides in pertinent part:

"A person is guilty of disseminating indecent material to minors in the first degree when:

1. knowing the character and content of the communication which, in whole or in part, depicts . . . sexual conduct . . . which is harmful to minors, he intentionally uses any computer . . . to . . . engage in such communication with a person who is a minor; and

2. by means of such communication he importunes, invites or induces a minor to engage in . . . *sexual contact with him, or* to engage in . . . *sexual conduct for his benefit*."[emphasis added].

The indictment, which contained five counts of attempted dis-

seminating indecent material to minors in the first degree, charged the defendant only under the theory that the defendant sought to lure a person he believed to be a minor into sexual contact with him (hereinafter the physical-contact theory). The bill of particulars was consistent with the indictment, limiting the charges to the physical-contact theory. The indictment did not charge that the defendant sought to have a person he believed to be a minor engage in sexual conduct for the defendant's benefit (hereinafter the defendant's-benefit theory). The defendant's-benefit theory could, *if charged*, have permitted a conviction without evidence that the defendant sought to be in the minor's physical presence at any time. In other words, the defendant's-benefit theory would have been satisfied with proof that the defendant importuned, invited, and induced the person he believed to be a minor to engage in sexual conduct, e.g., masturbation, during their cyber chats, for the defendant's benefit, e.g., the defendant's arousal.

Nevertheless, perhaps concerned that the evidence on the physical-contact theory was too weak to sustain a conviction—a concern that, as I discuss below, would have been well founded— the prosecutor urged the Judge in this bench trial to find the defendant guilty on the uncharged defendant's-benefit theory. By overruling the defendant's precise objections to this impermissible alteration in the theory of the prosecution, and thereby allowing the People to constructively amend the indictment, the County Court erred (*see People v LaPetina*, 34 AD3d 836, 839 [2006], *affd* 9 NY3d 854 [2007]; *People v Taplin*, 1 AD3d 1044, 1045 [2003]; *People v Brown*, 221 AD2d 353, 353-354 [1995]; *People v Chicas*, 204 AD2d 476, 477 [1994]).

My colleagues in the majority do not state any contrary view as to the impropriety of the People's change in theory. Instead, they conclude that, because this was a bench trial, and in light of the court's comment after summations, there is no danger that the fact-finder convicted the defendant on an improper basis (*but see People v Haines*, 139 AD2d 591, 592 [1988]; *but cf. People v Giocastro*, 210 AD2d 254 [1994] [reversal after bench trial on weight of the evidence]). I cannot share their confidence in that conclusion because it fails to take into account the fact that the court overruled the defendant's objection to the improper amendment and never disclaimed reliance on the defendant's-benefit theory. In short, because the Trial Judge, as the trier of fact, never abjured the uncharged defendant's-benefit theory, he may have convicted the defendant on an accusation for which the grand jury failed to indict him (*see* CPL 200.70 [1]; *People v Grega*, 72 NY2d at 498; *People v Kaminski*,

58 NY2d 886, 887 [1983]; *cf. People v Martinez*, 83 NY2d 26, 32-35 [1993], *cert denied* 511 US 1137 [1994]; *People v Shealy*, 51 NY2d 933, 934 [1980]; *People v Barnes*, 50 NY2d 375, 379 n 3 [1980] [nonjury trial]; *People v Rodriguez*, 164 AD2d 832, 833 [1990] [nonjury trial]; *People v Haines*, 139 AD2d 591, 592 [1988] [nonjury trial]). Thus, I conclude that the convictions must be reversed.

The only remaining question is the appropriate corrective action (*see* CPL 470.10 [3]). Because any conviction on the physical-contact theory was against the weight of the evidence, I conclude that the indictment must be dismissed, rather than that the case be remitted for a new trial on that theory. I agree with the majority that a conviction on the physical-contact theory was supported by legally sufficient evidence, if the Internet communications are read in fragments, isolated from their full context. In determining whether the evidence was legally sufficient, we must, of course, consider whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (*People v Contes*, 60 NY2d 620, 621 [1983], quoting *Jackson v Virginia*, 443 US 307, 319 [1979]; *see People v Conway*, 6 NY3d 869, 872 [2006]; *People v Santi*, 3 NY3d 234, 246 [2004]; *People v Rossey*, 89 NY2d 970 [1997]). "Ultimately, so long as the evidence at trial establishes 'any valid line of reasoning and permissible inferences [that] could lead a rational person' to convict, then the conviction survives sufficiency review" (*People v Santi*, 3 NY3d at 246, quoting *People v Williams*, 84 NY2d 925, 926 [1994]; *see People v Bleakley*, 69 NY2d 490, 495 [1987]). Thus, I agree that, measured by that standard, the evidence of the defendant's guilt under the physical-contact theory is legally sufficient.

Nevertheless, I conclude that any verdict of guilt at this trial on that theory—the only one we may consider because it was the only one with which the defendant was charged—was against the weight of the evidence (*see* CPL 470.15 [3] [b]; [5]), particularly when the communications are considered in their entirety and in full context. As the Court of Appeals has so recently reaffirmed, the first question we must ask on factual review of a verdict is whether an "acquittal would not have been unreasonable" (*People v Danielson*, 9 NY3d 342, 348 [2007]; *see People v Romero*, 7 NY3d 633, 643 [2006]; *People v Bleakley*, 69 NY2d at 495). Here, I conclude that an acquittal would not have been unreasonable. Therefore, we must "weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such

conclusions. Based on the weight of the credible evidence, [we must then] decide[ ] whether the [fact-finder] was justified in finding the defendant guilty beyond a reasonable doubt" (*People v Danielson*, 9 NY3d 342, 348 [2007]). Doing so in this case, I agree with the words of Judge Frederick Crane, who, writing for the Court of Appeals in *People v Crum* (272 NY 348, 350 [1936]), said, "[A] reading of this record causes me to hesitate. I am not convinced." First, it must be observed that, unlike in most weight-of-the-evidence reviews, credibility of witnesses plays little part in the analysis here; the evidence was almost entirely supplied by the actual written communications between the defendant and Investigator Pascal Storino, writing as "John in Yonkers 914," purportedly a 14-year-old boy. Thus, our factual review is composed almost entirely of "review[ing the] rational inferences that may be drawn from the evidence and evaluat[ing] the strength of such conclusions" (*People Danielson*, 9 NY3d 342, 348 [2007]). Upon my reading of the communications between the defendant and Investigator Storino, I conclude that it was the investigator who importuned, invited, and induced the defendant to meet for the purpose of actual sexual contact and not the other way around. The defendant was reluctant, and he agreed to meet at all only after Investigator Storino persisted over a lengthy period of time. Consequently, I am persuaded that any verdict of guilt under the physical-contact theory was against the weight of the evidence. Given this conclusion, a retrial on this theory is forbidden by statute (*see* CPL 470.20 [5]; *People v Romero*, 7 NY3d at 644 n 2). Instead, the only proper corrective action is to dismiss the indictment (*see* CPL 470.20 [5]).

By vivid contrast, the evidence that the defendant importuned, invited, or induced a person he believed to be a 14-year-old boy to engage in sexual conduct for his benefit is overwhelming; it is all over this record, and, had the defendant been charged under this theory, convictions on all five counts charged in the indictment would have been almost certain. The grand jury, however, did not charge the defendant under this theory—and the People never took the simple step of obtaining a superseding indictment—and it is fundamental, therefore, that the fact-finder could not convict him of any count under this theory (*see People v Haines*, 139 AD2d 591, 592 [1988]).

I respectfully dissent.