OPINION OF THE COURT
Jill Konviser, J.
The defendants are charged in a single indictment with acting in concert to commit the following crimes: murder in the second degree as a hate crime, murder in the second degree, manslaughter in the second degree as a hate crime, manslaughter in the second degree, assault in the first degree as a hate crime, assault in the first degree, attempted robbery in the first degree as a hate crime, attempted robbery in the first degree, attempted robbery in the second degree as a hate crime, and attempted robbery in the second degree.
The defendants have jointly filed a motion to dismiss all of the hate crimes charges contained in the indictment on two grounds: (1) that their conduct does not fall within the scope of the hate crimes statute as they acted without bias, prejudice or hatred toward the decedent, and (2) that the hate crimes statute, as applied to the facts of this case, is unconstitutionally vague. The People oppose the defendants’ motion. Oral argument was held on June 19, 2007. For the reasons that follow, the motion to dismiss the hate crimes charges in the indictment is denied.[1]
*283 A. Background
1. The Hate Crimes Statute
Penal Law § 485.05 (1) (a) provides:
“A person commits a hate crime when he or she commits a specified offense[2] and . . . intentionally selects the person against whom the offense is committed or intended to be committed in whole or in substantial part because of a belief or perception regarding the race, color, national origin, ancestry, gender, religion, religious practice, age, disability or sexual orientation of a person, regardless of whether the belief or perception is correct.”
In addition, Penal Law § 485.05 (2) provides:
“Proof of race, color, national origin, ancestry, gender, religion, religious practice, age, disability or sexual orientation of the defendant, the victim or of both the defendant and the victim does not, by itself, constitute legally sufficient evidence satisfying the people’s burden under paragraph (a) or (b) of subdivision one of this section.”
2, The People’s Evidence
The People maintain that the defendants, under an acting in concert theory, intentionally selected the decedent, Michael Sandy, as the person against whom the specified offenses were committed “in whole or in substantial part because of a belief *284 or perception regarding” his sexual orientation. (See Penal Law § 485.05 [1] [a].) Specifically, the People allege, and the evidence before the grand jury shows, that on the evening of October 8, 2006, in Kings County, defendant Fortunato told defendant Fox and one Gary Timmins, in sum and substance, “that in the past, he had contacted gay men by means of a computer” and robbed them. (People’s affirmation in opposition to motion to dismiss hate crime counts at 2 11 3.) Fortunato allegedly also told Fox and Timmins in sum and substance that “this was an easy way to rob someone.” (Id.)
The People also maintain that on that same evening, while at Fortunato’s house, Fortunato, in the presence of Fox and Timmins, used a computer to enter a “gay chat room” where he contacted Sandy “whom they all believed to be a gay man, and arranged to meet him.” (Id.) Later that evening, while Fortunato, Fox and Timmins were on their way to meet Sandy they met defendant Shurov and told him, in sum and substance, “of their plans to rob a gay man.” (Id. at 2 ¶ 4.) The four men then walked together to the meeting area where Sandy was waiting in his car. Fox and Fortunato approached Sandy’s car, but Sandy, in sum and substance, “expressed discomfort about meeting them under those circumstances and drove away.” (Id.)
Fortunato, Fox, Shurov and Timmins then went back to Fortunato’s house where they resumed computer contact with Sandy. After speaking with Sandy about drugs and informing him, in sum and substance, that he “would get his dick sucked,” arrangements were made for Sandy to meet Fox at a particular location where they would then drive together to Plum Beach. (Id. at 2 11 5.) Unbeknownst to Sandy, however, Fortunato, Shurov and Timmins would also be there. (Id. at 2-3 ¶ 5.)
The evidence shows that Fox and Sandy met and drove together in Sandy’s car to Plum Beach. At some point after arriving at that location, Sandy was confronted by the defendants and punched. As Sandy attempted to reenter his car and flee the area, Shurov pulled him out and again punched him. Sandy then fled on foot only to be chased onto the Belt Parkway where he was hit by a car. Sandy later died as a result of his injuries. (Id. at 3 ¶ 6.)
3. Rulings on the Legal Sufficiency of the Grand Jury Minutes
On March 14, 2007, this court issued decisions and orders with respect to each defendant upholding the legal sufficiency of all of the charges before the grand jury, including the hate crimes charges. In upholding the legal sufficiency of the hate *285 crimes charges, this court found, inter alia, that the crimes alleged in counts one, three, five, seven and nine of the indictment are “specified offense[s]” as that term is defined by the hate crimes statute (Penal Law § 485.05 [3]). Further, this court found, pursuant to Penal Law § 485.05 (1) (a), that legally sufficient evidence was presented to the grand jury to show that each defendant, while acting in concert with others, intentionally selected the person against whom the offenses were allegedly committed (Sandy) “in whole or in substantial part because of a belief or perception regarding” his “sexual orientation.” (See decisions of Mar. 14, 2007 upholding the legal sufficiency of the grand jury minutes.)
B. The Defendants’ Claims
1. The Defendants’ Claim That Their Conduct Does Not Fall within the Scope of the Hate Crimes Statute[3]
The defendants’ claim that their conduct does not fall within the scope of the hate crimes statute is rejected. A person commits a hate crime when he or she commits a specified offense and intentionally selects the person against whom the offense is committed or intended to be committed in whole, or in substantial part, based on a belief or perception regarding the person’s “race, color, national origin, ancestry, gender, religion, religious practice, age, disability or sexual orientation.” (Penal Law § 485.05 [1] [a].) In this case, the grand jury evidence shows that the defendants devised a plan to lure a gay man to a particular location in order to rob him, as Fortunato told Fox and Timmins he had done in the past. The evidence further shows that the defendants followed through on this plan by: (1) using the Internet to enter a gay chat room; (2) engaging in conversations in that gay chat room with Sandy, whom they believed to be a gay man; (3) luring Sandy to a remote location with false promises of sexual favors; and (4) attempting to rob Sandy upon his arrival.
The grand jury evidence shows that this is not a case where hate crimes are charged simply because the victim just happened to be of a particular sexual orientation. (See Penal Law § 485.05 [2].) Rather, this is a case where the defendants deliberately set out to commit a violent crime against a man *286 whom they intentionally selected because of his sexual orientation. Thus, the hate crimes charges in this case are consistent with the intent of the Legislature as manifested by the plain language of Penal Law § 485.05 (1) (a). (See People v Finnegan, 85 NY2d 53, 58 [1995], cert denied 516 US 919 [1995].)
The defendants implicitly recognize that their conduct falls within the plain language of the hate crimes statute and seek to avoid its implications by asking this court to redefine a hate crime in a manner that would remove them from the scope of the statute. They claim that the legislative findings set forth in Penal Law § 485.00 alter the definition of a hate crime and additionally require the People to prove that the crime was motivated by bias, prejudice or hatred. As the defendants assert that there is no evidence that they were motivated by bias, prejudice or hatred toward Sandy when they attempted to rob him, they claim the hate crimes charges must be dismissed.
The legislative findings, however, do not require proof of anything other than the intentional selection of a victim because of their “race, color, national origin, ancestry, gender, religion, religious practice, age, disability or sexual orientation.” (Penal Law § 485.05 [1] [a].) The Legislature appears to have included its findings within Penal Law article 485 as a means of: (1) justifying its decision to enhance sentences in cases where victims of specified offenses are intentionally selected based on a protected characteristic; (2) underscoring its outrage regarding such conduct; and (3) advancing its goal of deterring crimes motivated by bias, prejudice or hatred. (See Penal Law § 485.00 [enhanced punishment is necessary in such cases “to provide clear recognition of (their) gravity . . . and the compelling importance of preventing their recurrence”].) The Legislature, through its findings, therefore, made an assessment that the intentional selection of a victim based on a protected characteristic is tantamount to a crime motivated by bias, prejudice or hatred, thereby justifying enhanced punishment. (See Penal Law § 485.00.)[4] Neither the legislative findings nor any other *287 portion of the legislative history alter the definition of a hate crime as set forth in Penal Law § 485.05 (1) (a).[5]
Moreover, had the Legislature wanted to require that a hate crime be based on something more than just the intentional selection of the victim because of a particular attribute, it could have done so. That the Legislature limited such offenses solely to instances where a victim of a specified offense is intentionally selected in whole or in substantial part because of a protected trait is a clear indication of its intent that no other criterion was required in order to sustain such a charge. (See People v Tychanski, 78 NY2d 909, 911-912 [1991] [“ ‘The failure of the Legislature to include a matter within a particular statute is an indication that its exclusion was intended’ ” (quoting Pajak v Pajak, 56 NY2d 394, 397 [1982])]; McKinney’s Cons Laws of NY, Book 1, Statutes § 74; see also McKinney’s Cons Laws of NY, Book 1, Statutes § 240 [“The maxim expressio unius est ex-clusio alterius is applied in the construction of. . . statutes, so that where a law expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded”]; McKinney’s Cons Laws of NY, Book 1, Statutes § 94, at 194 [“the language of an enactment should be given its plain meaning, or its everyday commonplace interpretation; and the court should neither limit nor extend plain language. Words will not be expanded so as to enlarge their meaning to something which the Legislature could easily have expressed but did not”].)
While the defendants appear to question the wisdom of the Legislature’s decision in drafting the hate crimes statute in this manner, a court’s role in interpreting a statute is limited to ascertaining the Legislature’s intent in drafting the statute and interpreting the statute in accord with that intent. (See People v Smith, 79 NY2d 309, 311 [1992] [a court’s purpose in interpret *288 ing a statute “is not to pass on the wisdom of a statute or any of its requirements, but rather to implement the will of the Legislature as expressed in its enactment”]; Pajak v Pajak, 56 NY2d at 397 [“It is a fundamental canon of statutory construction that courts ‘do not sit in review of the discretion of the Legislature or determine the expediency, wisdom, or propriety of its actions on matters within its powers’ ” (quoting McKinney’s Cons Laws of NY, Book 1, Statutes § 73)]; A. E. Nettleton Co. v Diamond, 27 NY2d 182, 194 [1970] [“The wisdom of a particular statute is beyond the scope of judicial review . . . and (a court) should not substitute (its) judgment for that employed by the Legislature in enacting the statute in question”].)
Finally, the defendants assert that they should not be charged with hate crimes as their decision to rob Sandy was motivated only by their desire to obtain money and drugs. This argument is without merit. The hate crimes statute is premised both on the intent to commit a specified offense and on the intent to select a victim of that offense because of that victim’s “race, color, national origin, ancestry, gender, religion, religious practice, age, disability or sexual orientation” (Penal Law § 485.05 [1] [a]). Thus, for a hate crime to be charged in this case the statute requires both an intent to attempt to forcibly steal property, which the defendants admit (see Penal Law §§ 110.00, 160.00), and an intent to select the robbery victim because of that victim’s sexual orientation, which the grand jury evidence supports. (See Penal Law § 485.05 [1] [a].) Simply stating that their motivation was limited to their desire to obtain money and drugs, therefore, does not take the defendants out of the ambit of the hate crimes statute.
The defendants’ claim that their conduct does not fall within the scope of the hate crimes statute is rejected.
2. The Defendants’ Claim That the Hate Crimes Statute is Unconstitutionally Vague as Applied to the Facts of this Case
The defendants claim that the hate crimes statute is unconstitutionally vague as applied to the facts of this case.[6] Two grounds are raised in support of this claim. First, the defendants *289 assert that the words “in whole or in substantial part” as set forth in the hate crimes statute are “imprecise.” Such imprecision, the defendants say, caused them to be charged with hate crimes even though their decision to select Sandy as their victim was not based on his sexual orientation, but rather on their belief that he would be an “easy mark and they would be able to take his drugs or money without much trouble.” (Defendants’ motion at 3.) The defendants’ second argument is apparently that the hate crimes statute does not provide officials with clear standards for enforcement unless it is read to require that a hate crime may be charged only when an offender is motivated by bias, prejudice or hate. For the reasons that follow, the constitutional challenge to the hate crimes statute is rejected.
The law is well settled that a state statute “is presumed to be valid” (see People v Foley, 94 NY2d 668, 677 [2000], cert denied 531 US 875 [2000]) and “will be stricken as unconstitutional only as a last resort.” (People v Davis, 43 NY2d 17, 30 [1977], cert denied 435 US 998 [1978]; see Matter of McGee v Korman, 70 NY2d 225, 231 [1987].) Thus, a defendant challenging the constitutionality of a statute bears the “heavy burden” of proving that the statute is invalid. (People v Foley, 94 NY2d at 677.) To prevail in this case, the defendants must prove that the hate crimes statute is unconstitutional beyond a reasonable doubt.[7] (People v Tichenor, 89 NY2d 769, 773 [1997], cert denied 522 US 918 [1997]; People v Scalza, 76 NY2d 604, 607 [1990]; People v Pagnotta, 25 NY2d 333, 337 [1969].) The defendants have not met their burden.
The New York Court of Appeals has adopted a two-pronged analysis to determine whether a statute is unconstitutionally vague. Under the first prong, a court must determine whether the statute provides a person of “ordinary intelligence” with “sufficient notice of what conduct is prohibited.” (People v Bright, 71 NY2d 376, 382 [1988]; see also People v Nelson, 69 *290 NY2d 302, 307 [1987].) If a statute “ ‘conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices,’ ” it will survive a vagueness challenge even if it contains language that is “inherently imprecise.” (People v Shack, 86 NY2d 529, 538 [1995], quoting United States v Petrillo, 332 US 1, 8 [1947]; see People v Kozlow, 8 NY3d 554, 561 [2007].)
Under the second prong of the vagueness test, a court must determine whether the statute is written in such a manner “as to permit or encourage arbitrary and discriminatory enforcement.” (People v Bright, 71 NY2d at 382.) The Constitution, however, “only requires reasonable precision; it does not impose ‘impossible standards’.” (People v Cruz, 48 NY2d 419, 424 [1979], quoting United States v Petrillo, 332 US at 7.) Thus, so long as the statute provides the police, judges and juries with “clear standards for enforcement,” the second prong of the vagueness test will be satisfied. (People v Stuart, 100 NY2d 412, 420 [2003]; see People v Cruz, 48 NY2d at 424 [second prong of the vagueness test is satisfied if the statute provides “police, Judges and juries” with “ ‘boundaries sufficiently distinct’ . . . to fairly administer the law”].)
In People v Stuart (100 NY2d at 421-423), the Court of Appeals set forth the analysis to be applied to both as-applied and facial vagueness challenges:
“As the term implies, an as-applied challenge calls on the court to consider whether a statute can be constitutionally applied to the defendant under the facts of the case. ... By contrast, a facial challenge requires the court to examine the words of the statute on a cold page and without reference to the defendant’s conduct. . . .
“Because facial challenges to statutes are generally disfavored . . . and legislative enactments carry a strong presumption of constitutionality . . . , a court’s task when presented with both a facial and as-applied argument is first to decide whether the assailed statute is impermissibly vague as applied to the defendant. ... If it is not and the statute provides the defendant with adequate notice and the police with clear criteria, that is the end of the matter. ‘[T]he court will not strain to imagine marginal situations in which the application of the statute is not so clear’ (Nelson, 69 NY2d at 308 . . . ).
“It follows, therefore, that if a defendant makes an *291 as-applied vagueness challenge and the court repudiates it, the facial validity of the statute is confirmed. . . . That is so because, in rejecting the as-applied challenge, the court will have necessarily concluded that there is at least one person — the defendant — to whom the statute may be applied constitutionally. ... It would thus be impossible for a defendant to establish the statute’s unconstitutionality in all of its applications.”
The defendants have not met their heavy burden of proving beyond a reasonable doubt that the hate crimes statute is unconstitutionally vague as applied to the facts of this case. As a threshold matter, the statute is not unconstitutionally vague as the plain wording of the statute “conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.” (People v Shack, 86 NY2d at 538.) Indeed, the statute provides members of the public, the police, prosecutors and juries with clear notice of the specific conduct that is prohibited — the intentional selection of a crime victim in whole or in substantial part because of that victim’s sexual orientation. Such a conclusion has been reached not only by New York courts, which have rejected vagueness challenges to the hate crimes statute (see People v Amadeo, 2001 NY Slip Op 40190[U] [Sup Ct, Queens County 2001, Rotger, J.]; People v Diaz, 188 Misc 2d 341 [Sup Ct, NY County 2001]), but also by courts in other jurisdictions, which have rejected vagueness challenges to similarly worded hate crimes statutes. (See State v Plowman, 314 Or 157, 838 P2d 558 [1992], cert denied 508 US 974 [1993]; State v Mitchell, 163 Wis 2d 652, 473 NW2d 1 [Ct App 1991] .)[8]
Nonetheless, the defendants argue that the statute is unconstitutionally vague as applied to them in that the term *292 “in whole or in substantial part,” as set forth in the hate crimes statute, is “imprecise.” (See oral argument transcript at 11.) These words, however, have common and ordinary meanings and, in the context in which they are used, provide sufficient notice of the prohibited conduct.
Although the term “in whole or in substantial part” is not defined by the Penal Law, the Legislature is not precluded “from using ordinary terms to express ideas that find adequate interpretation in everyday usage and understanding.” (People v Illardo, 48 NY2d 408, 414 [1979].) Where, as here, the words at issue are not defined by the statute itself, the common and ordinary meanings of those terms are to be applied. (McKinney’s Cons Laws of NY, Book 1, Statutes § 232 [“Words of ordinary import used in a statute are to be given their usual and commonly understood meaning”].) A court may consult a dictionary to determine “the sense with which a word was used in a statute.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 234.)
The words at issue in this case are “in whole or in substantial part.” Webster’s Dictionary defines “whole,” inter alia, as “[h]aving no part or element missing: complete.” (Webster’s II New Riverside Dictionary 774 [rev ed 1996]; see Pime v Loyola Univ. of Chicago, 585 F Supp 435, 440 [ND Ill 1984] [“In its ordinary sense, the word ‘whole’ . . . means all, total and entirely”], affd 803 F2d 351 [7th Cir 1986].) “Substantial” is defined by Webster’s Dictionary, inter alia, as “[considerable.” (Webster’s II New Riverside Dictionary 673.) “Part” is defined, inter alia, as a “division, portion, or segment of a whole.” (Id. at 499.) “Substantial part” has been “construed as meaning that which is considerable in amount, value, or the like.” (Pime v Loyola Univ. of Chicago, 585 F Supp at 440.)
In this case, any person of ordinary intelligence would understand that the words “in whole” mean completely or entirely and the words that immediately follow it “substantial part” mean a considerable portion or amount. (People v Nelson, 69 NY2d at 307.) Thus, when considered in the context of the statute and the facts of this case, these terms sufficiently inform a person of ordinary intellect that if you search the Internet for the express purpose of finding a gay man to rob, a man you believe would “probably not offer much resistance” (see defendants’ motion at 3), you will be charged with a hate crime. This is so because at least a considerable portion, if not the entirety of your decision to intentionally select the victim, was *293 based on a belief or perception regarding his or her sexual orientation. (Penal Law § 485.05 [1] [a].)
For these same reasons, the term “in whole or in substantial part,” when considered in conjunction with the remainder of the statute, satisfies the second prong of the vagueness test in that it clearly informs law enforcement officials of the conduct that violates the statute, i.e., the intentional selection of a crime victim based entirely or in considerable part upon that victim’s sexual orientation. (People v Stuart, 100 NY2d at 420-421.) Indeed, these statutory guidelines, far from permitting the statute to be enforced in an arbitrary or discriminatory manner in this case, actually made it relatively easy for law enforcement officials to conclude that a considerable portion, if not the entirety of the defendants’ decision to intentionally select Sandy to victimize, was based on their beliefs and perceptions regarding Sandy’s sexual orientation. After all, the evidence with which they were presented showed that the defendants did not concoct a plan to use the Internet to rob just any “easy mark” of “drugs or money,” rather they limited the field of potential victims to a single protected category — gay men. The defendants’ claim that the term “in whole or in substantial part” is unconstitutionally vague is rejected.
The defendants’ second argument appears to be that the definition of a hate crime as set forth in Penal Law § 485.05 (1) (a) is unconstitutionally vague unless it is read to require that the crimes against Sandy were actually motivated by bias, prejudice or hate. The law is well settled, however, that a court examining a statute on vagueness grounds is required to determine whether the existing statutory language sufficiently informs persons of ordinary intelligence of the forbidden conduct and provides law enforcement officials with clear standards for enforcement. (See People v Stuart, 100 NY2d at 420-421.) If the statute as drafted accomplishes these goals then the constitutional challenge must be dismissed notwithstanding an assertion that the inclusion of an additional element in the statute would have made it easier for members of the public and law enforcement officials to understand the conduct prohibited by the statute. (See People v Stuart, 100 NY2d at 426-427 [rejecting claim that antistalking statute was unconstitutionally vague as applied because it did not require the People to prove that an offender “intend(ed) a specific result, such as fear or harm” because the statute, as written, provided citizens with clear notice of the prohibited conduct]; People v Nelson, 69 NY2d at *294 307-308 [rejecting claim that jostling statute was unconstitutionally vague as applied because it did not require the People to prove larcenous intent since the statute as written provided innocent citizens with clear notice of the prohibited conduct].)
In this case, the defendants have not met their burden of proving beyond a reasonable doubt that the definition of a hate crime as set forth in Penal Law § 485.05 (1) (a), which makes no specific reference to bias, prejudice or hate, is unconstitutionally vague as applied. Nor could they as the definition “clearly delineates specific conduct easily avoided by the innocent-minded” — namely, the intentional selection of a crime victim in whole or in substantial part because of that victim’s sexual orientation. (People v Nelson, 69 NY2d at 307-308.) Indeed, such conduct could have been easily avoided in this case if the defendants had not intentionally selected a gay man to rob.
Moreover, the statute provides clear standards for enforcement in that it does not permit a hate crime to be charged merely because a victim happens to possess a trait protected by the statute. Indeed, Penal Law § 485.05 (2) would not countenance such a result. Rather, such a prosecution is permitted only when the victim is intentionally selected because of that protected trait. (See Penal Law § 485.05 [1] [a].) These clear standards of enforcement were easily applied by law enforcement officials in this case as the evidence shows that the defendants made a deliberate and purposeful decision to target Sandy because of his sexual orientation. (People v Stuart, 100 NY2d at 422.)[9]
*295 Finally, the law is well settled that in the context of an as-applied vagueness challenge, “if the actions of the defendants are plainly within the ambit of the statute [as they are in this case], the court will not strain to imagine marginal situations in which the application of the statute is not so clear.” (People v Nelson, 69 NY2d at 308; see People v Stuart, 100 NY2d at 422-423.) Therefore, “[t]his court cannot consider the possibility,” as suggested by the defendants in their motion papers, “that the statute may be vague as applied in other hypothetical situations.” (People v Nelson, 69 NY2d at 308.)
The defendants’ claim that the hate crimes statute is unconstitutionally vague is rejected.

. The People’s argument that the defendants’ motion should be summarily denied as time-barred is rejected. Notwithstanding the 45-day time period prescribed by CPL 255.20 (1) in which all motions should be served and filed, a court, “in the interest of justice, and for good cause shown, may, in its discretion, at any time before sentence, entertain and dispose” of an untimely motion on the merits. (CPL 255.20 [3].) This court has chosen to exercise its discretion to consider the defendants’ motion based on the following: (1) defendants have raised challenges to the constitutionality and scope of a *283 relatively new statute about which there is little New York State case law (indeed, there is no New York State appellate authority that directly addresses these issues); (2) existing lower court authority does not deal with the precise issues that the defendants have raised; and (3) failure to consider the defendants’ challenge to the statute merely because the motion was not filed within the 45-day time period could have an adverse effect on the defendants’ fundamental constitutional rights in that the hate crimes statute potentially allows matters into evidence that would ordinarily be precluded. (See e.g. People v Amadeo, 188 Misc 2d 187 [Sup Ct, Queens County 2001] [court permitted untimely challenge to constitutionality of hate crimes statute].) The People’s claim that they are prejudiced by any delay attendant to this court’s resolution of the defendants’ motion is unfounded. No prejudice has been shown as the issues raised in the instant motion wrill be resolved at or near the time of all of the outstanding pretrial suppression motions.

. The “specified offenses” in the indictment upon which the hate crimes charges are based are: murder in the second degree (Penal Law § 125.25 [3]), manslaughter in the second degree (Penal Law § 125.15 [1]), assault in the first degree (Penal Law § 120.10 [4]), attempted robbery in the first degree (Penal Law §§ 110.00, 160.15 [1]), and attempted robbery in the second degree (Penal Law §§ 110.00, 160.10 [1]). Each of these crimes are “specified offense[s]” as defined by Penal Law § 485.05 (3).

. Although the defendants indicated that the purpose of filing the instant motion was to challenge the constitutionality of the hate crimes statute, the defendants have raised the additional claim that their conduct does not fall within the scope of the statute. As this issue has been briefed and argued by both parties, it has been considered by this court.

. As hate crimes legislation is often a matter of great controversy (see e.g., MacNamara, New York’s Hate Crimes Act of 2000: Problematic and Redundant Legislation Aimed at Subjective Motivation, 66 Alb L Rev 519 [2003]), the Legislature apparently felt the need to justify its decision to enact such legislation by including its findings in the text of the statute. But no matter the reason for its inclusion, surely it was not to add an element to the definition of a hate crime as set forth in Penal Law § 485.05 (1) (a), which *287 focuses solely on the intentional selection of a victim on account of a protected trait.

. While a defendant’s subjective manifestation of bias or hate may be relevant to determining whether a victim was intentionally selected because of a protected characteristic (see People v Marino, 35 AD3d 292, 293 [1st Dept 2006] [holding, inter alia, that the defendant’s use of a slur supported the inference that the victim was intentionally selected on account of his race]), the fact remains that the only criterion relevant to determining whether hate crimes may be charged in this case is whether the victim was intentionally selected in whole or in substantial part because of his sexual orientation. (Penal Law § 485.05 [1] [a].)

. No facial challenge to the statute has been made in this case. (See defendants’ motion at 9 [“Here the defendant is not challenging the statute facially but rather the application of the statute under the facts of this case i.e. as-applied”].) Nor have the defendants claimed that the hate crimes statute violates the First Amendment. Indeed, such a claim would not be viable as the Legislature, in drafting the hate crimes statute, was guided in substantial part by the Wisconsin hate crimes statute that has been upheld on First Amendment grounds by the United States Supreme Court in Wisconsin v *289 Mitchell (508 US 476 [1993]). (See Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law art 485, 2007 Pocket Part, at 208-209.)

. There is no merit to the defendants’ wholly unsupported claim that the “strong presumption of constitutionality of legislative enactments” does not apply to an as-applied vagueness challenge. (See e.g. People v Jenner, 39 AD3d 1083, 1085-1086 [3d Dept 2007]; Matter of Carpenter Tech. Corp. v Commissioner of Taxation & Fin., 295 AD2d 830, 833-834 [3d Dept 2002], lv denied 99 NY2d 501 [2002]; People v Collins, 288 AD2d 756, 759 [3d Dept 2001], lv denied 97 NY2d 752 [2002]; People v Reed, 265 AD2d 56, 67-68 [2d Dept 2000], lv denied 95 NY2d 838 [2000]; People v Cintron, 13 Misc 3d 833, 845 [Sup Ct, Bronx County 2006].)

. Mitchell, which upheld Wisconsin’s hate crimes statute on vagueness and First Amendment grounds (see 163 Wis 2d at 660-665, 473 NW2d at 4-6), was reversed by the Wisconsin Supreme Court on the issue of whether the statute violated the First Amendment. (See State v Mitchell, 169 Wis 2d 153, 485 NW2d 807 [Sup Ct 1992].) The Wisconsin Supreme Court did not consider whether its hate crimes statute was unconstitutionally vague. (Id.) The United States Supreme Court, in Wisconsin v Mitchell (508 US 476 [1993]), reversed the Wisconsin Supreme Court’s decision and held that the Wisconsin hate crimes statute was consistent with the First Amendment. The United States Supreme Court did not consider whether the statute was unconstitutionally vague. (Id.) The case was then remanded to the Wisconsin Supreme Court which affirmed the intermediate appellate court’s determination that the Wisconsin hate crimes statute was not unconstitutionally vague. (See State v Mitchell, 178 Wis 2d 597, 504 NW2d 610 [Sup Ct 1993].)

. In actuality, the defendants’ argument with respect to the absence of bias, prejudice or hate is not one of constitutional dimension, but rather is a claim that the statute was enforced in a manner contrary to legislative intent, a matter wholly irrelevant to the issue of vagueness. Indeed, an argument similar to the one the defendants now raise was recently rejected by the Appellate Division, Third Department, in People v Jenner (39 AD3d 1083 [3d Dept 2007]). In Jenner, the defendant was convicted, under Penal Law § 490.20, of making a “terroristic threat.” Although the evidence was legally sufficient to support his conviction, the defendant argued that the “terroristic threat” statute was unconstitutionally vague as his actions, while technically covered by the statute, were “not what the Legislature had in mind when it enacted [the] statute after the terroristic attacks of September 11, 2001 and he should not be labeled a terrorist.” (People v Jenner, 39 AD3d at 1086.) In rejecting this argument the Court held, inter alia, that “[rjegardless of the Legislature’s intent, the plain words of Penal Law § 490.20 clearly inform the public and law enforcement officials of the conduct forbidden by the statute.” {Id.) Similarly, in this case, notwithstanding the defendants’ contention about *295 what the Legislature intended when it drafted the hate crimes statute, the statute itself is not unconstitutionally vague.