Breest v Haggis (2019 NY Slip Op 09398)





Breest v Haggis


2019 NY Slip Op 09398


Decided on December 26, 2019


Appellate Division, First Department


Moulton, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 26, 2019
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Peter Tom, J.P.
Ellen Gesmer
Cynthia S. Kern
Peter H. Moulton,JJ.


161137/17 9783 

[*1]Haleigh Breest, Plaintiff-Respondent,
v
Paul Haggis, Defendant-Appellant. 
Eleven Civil Rights Organizations, C.A. Goldberg PLLC, Professor Sally F. Goldfarb, Professor Julie Goldscheid, Professor Victoria Nourse and Legal Momentum, Amici Curiae.



Defendant appeals from an order of the Supreme Court, New York
County (Robert R. Reed, J.), entered August 15, 2018, which denied his motion to dismiss the complaint and to strike the Jane Doe allegations.




Harris, St. Laurent & Chaudhry LLP, New York (Priya Chaudhry and Joseph Gallagher of counsel), and Mitchell Silberberg & Knupp LLP, New York (Jeffrey Movit and Christine Lepera of counsel), for appellant.
Emery Celli Brinckerhoff & Abady LLP, New York (Zoe Salzman, Jonathan S. Abady and Ilann M. Maazel of counsel), for respondent.
Kirkland & Ellis LLP, New York (Yosef J. Riemer, Ashley S. Gregory and Joseph M. Sanderson of counsel), for Her Justice, American Civil Liberties Union, Sanctuary for
Families, New York City Alliance Against Sexual Assault, National Organization for Women-New York City, Women's Justice NOW, FreeFrom, National Women's Law Center, Transgender Legal Defense & Education Fund, Anti Violence Project, Black Women's Blueprint and C.A. Goldberg PLLC, amici curiae.
Stroock & Stroock & Lavan LLP, New York (Jennifer S. Recine, Daniel H. Lewkowicz and Natalie R. Birnbaum of counsel), for Professor Sally F. Goldfarb, Professor Julie Goldscheid, Professor Victoria Nourse and Legal Momentum, amici curiae.



MOULTON, J.


The central question in this appeal is: what must a plaintiff allege in order to state a cause of action under New York City's Victims of Gender-Motivated Violence Protection Law (Administrative Code of City of NY § 10-1101 et seq.)?
The New York City Council passed the Victims of Gender-Motivated Violence Protection Law (VGM) in 2000 in response to the United States Supreme Court's decision in United States v Morrison (529 US 598 [2000]). The Morrison Court struck down the federal civil rights remedy for gender-motivated crimes contained in the Violence Against Women Act (42 USC § 13981) (VAWA), finding the remedy an unconstitutional exercise of Congressional power. VGM, as did its federal predecessor, provides a civil cause of action for victims of crimes of violence "committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender" (Administrative Code § 10-1103) and allows a victim of such a gender-based violent crime to collect money damages from the perpetrator.
In the decision on appeal, Supreme Court denied defendant's motion to dismiss plaintiff's amended complaint. The court also denied defendant's alternative request to strike allegations concerning other alleged sexual assaults from the amended complaint pursuant to CPLR 3013 and 3024(b). Supreme Court held, inter alia, that plaintiff's amended complaint adequately stated a cause of action under VGM by alleging that defendant had raped and sexually assaulted her, and spoke to her during the course of the alleged rape in ways that displayed gender-based animus. Supreme Court also found that allegations that defendant had sexually assaulted other women were relevant, at the pleading stage, to establish the requisite gender-based animus. Supreme Court's decision was consistent with state and federal trial court precedents that require such allegations of additional facts tending to show gender-based animus even where the alleged offense is rape or sexual assault. We write to clarify that these additional allegations are not necessary to prove animus in alleged rape and sexual assault cases such as the one at bar.
Plaintiff's Amended Complaint
Under CPLR 3211(a)(7), we evaluate the sufficiency of the amended complaint by assuming that the facts alleged therein are true and according plaintiff the benefit of every possible favorable inference (Wilson v Dantas, 29 NY3d 1051, 1056-1057 [2017]).
In January 2013, plaintiff was a 26-year-old publicist for a company that hosted film premieres in New York City. Defendant was, and remains, a prominent film and television producer, director and screenwriter. He was 59 at the time of the events alleged in the amended complaint. The two had a passing acquaintance from encountering each other at entertainment industry events.
On January 31, 2013, the parties both attended a premiere party in New York City. At the end of the party defendant offered to give plaintiff a ride home. She accepted. Once they were in the car, defendant invited plaintiff to come to his apartment for a drink. Plaintiff suggested that they go to a public bar instead. When defendant insisted, plaintiff agreed to go to his apartment.
The amended complaint alleges that once they were in defendant's apartment he immediately began to make unwanted sexual advances. Plaintiff told defendant to stop. Defendant said, "You're scared of me, aren't you?" and continued. As she resisted, defendant asked plaintiff her age. Plaintiff told him she was 26 and defendant replied, "Don't fucking act like an 18 year old." Plaintiff asked defendant, "Why are you doing this?" He replied, "What do you mean? You've been flirting with me for months." The amended complaint alleges that plaintiff's continued resistance, including telling defendant, "No," repeatedly, seemed to excite him. According to the amended complaint defendant eventually forced plaintiff to give him oral sex; then he digitally penetrated her and commented that she was "nice and tight"; then he raped [*2]her.
In his answer and his motion to dismiss defendant vigorously contests plaintiff's version of their interactions and asserts that the parties' sexual relations were consensual.
In late 2017 plaintiff's counsel contacted defendant and described plaintiff's allegations. The parties differ in their descriptions of what happened next. Plaintiff alleges that defendant's counsel subsequently asked plaintiff to come up with a settlement figure. Defendant contends that plaintiff's counsel wrote him directly, enclosing a draft complaint. He avers that he and his counsel vigorously denied the allegations in the draft complaint. According to defendant, plaintiff's counsel demanded $9 million to settle out of court.
Defendant brought an action in New York County in December 2017 for intentional infliction of emotional distress arising from plaintiff's settlement demand and threat to sue.
Plaintiff then filed her complaint, asserting a cause of action under VGM based on the January 31, 2013 incident. The two cases were assigned to a single justice. In January 2018, plaintiff filed an amended complaint with a slightly expanded account of the January 31 incident and allegations of three other sexual assaults allegedly perpetrated by defendant against other women in 1996, 2008 and 2015 (the Jane Doe allegations).
The parties cross-moved to dismiss the respective complaints. Defendant also moved in the alternative to strike the Jane Doe allegations in plaintiff's amended complaint. Supreme Court dismissed defendant's intentional infliction of emotional distress claim, and allowed plaintiff's claim under VGM to go forward. The court declined to strike the amended complaint's description of the Jane Doe allegations. In so holding, the court found that the amended complaint must allege facts that demonstrate some gender-based animus against women as a group, and not just against plaintiff. The court found indications of such animus in the allegations of statements made by defendant during the course of the incident, and in the fact that he allegedly committed sexual assaults on other women. The court also allowed plaintiff to further amend her complaint to add a claim under CPLR 213-c. Defendant does not appeal from that ruling, nor does he appeal the court's dismissal of his intentional infliction of emotional distress claim.
Discussion
VGM provides a civil cause of action for "injur[y] by an individual who commit[ted] a crime of violence motivated by gender" (Administrative Code § 10-1104). The term "crime of violence" is defined as "an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law . . . if the conduct presents a serious risk of physical injury to another, whether or not those acts actually resulted in criminal charges, prosecution or conviction" (Administrative Code § 10-1103). The term "crime of violence motivated by gender" is defined as a "crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender" (id.). This section was adopted verbatim from VAWA.
The parties do not dispute that the allegations in plaintiff's amended complaint set forth "crime[s] of violence." Additionally, defendant concedes that the alleged rape and sexual assault are sufficient to allege crimes of violence committed "because of gender or on the basis of gender." Where the parties differ concerns whether plaintiff has alleged facts that the alleged crime of violence was "due, at least in part, to an animus based on the victim's gender" (id.).
This appeal thus turns on the meaning of "an animus based on the victim's gender" in VGM. "Animus" is not a defined term in the statute, just as it was not defined in VAWA.
"When presented with a question of statutory interpretation, our primary consideration is to ascertain and give effect to the intention of the legislature. Inasmuch as the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof"
(Kuzmich v 50 Murray St. Acquisition LLC, 34 NY3d 84, 91 [2019] [internal quotations and citations omitted]). Generally, undefined terms in a statute "are to be interpreted in accordance with their ordinary and accepted meaning" (People v Hall, 158 AD2d 69, 80 [1st Dept 1990] [lv denied 76 NY2d 940 [1990]).
The problem here is that "animus" has two distinct meanings. As defendant argues, it can mean "prejudiced and often spiteful or malevolent ill will" (Merriam-Webster's Collegiate Dictionary [11th ed]). It can also mean, as plaintiff urges, "basic attitude or governing spirit" (id.; see also J. Rebekka S. Bonner Reconceptualizing VAWA's "Animus" for Rape in States' Emerging Post-VAWA Civil Rights Legislation, 111 Yale L J 1417, 1422 [2002] [urging that animus in this context means "(a)n attitude that informs one's actions" or one's "disposition"] [internal quotation marks omitted]).
Given this ambiguity we look to VGM's legislative history. Unfortunately, it provides no interpretative aid. The parties have not cited, and we could not find, any legislative history from the City Council that discusses the meaning of "an animus based on the victim's gender."[FN1]
Instead, both parties look to VAWA's legislative history, and case law interpreting VAWA,[FN2] to breathe meaning into the phrase "an animus based on the victim's gender." They also cite the few cases that have interpreted VGM, which themselves look to VAWA and the body of case law interpreting it.
VAWA's legislative history makes clear that Congress wanted to ensure that VAWA's civil rights cause of action would not federalize criminal and domestic relations law and flood federal courts with claims traditionally heard in state fora. Chief Justice Rehnquist took the unusual step of speaking publicly against the proposed legislation, asserting that VAWA's civil rights cause of action would place an unnecessary burden on the federal judiciary (William H. Rehnquist, Chief Justice's 1991 Year-End Report on the Federal Judiciary, The Third Branch, Jan. 1992, at 3; see Victoria F. Nourse, 11 Wisconsin Women's L J 1, 16 [1996]). Concomitantly, some state officials expressed concerns that the VAWA civil rights remedy would adversely affect state court litigation. As VAWA was being drafted, the Conference of Chief Justices of State Supreme Courts voted to oppose the civil rights remedy, on the ground that it would cause major dislocations in domestic relations cases because litigants would use it as a bargaining tool in divorce negotiations [FN3]. The legislative history addresses this concern and makes clear that not all rapes or sexual assaults fell within the ambit of the Act.[FN4]
Congress's concern that VAWA would federalize criminal and domestic relations law is demonstrated by changes it made to the civil rights remedy in the proposed bill. While initial drafts of VAWA created a statutory presumption that every rape was a violent crime committed [*3]on the basis of gender,[FN5] this presumption was not included in VAWA as enacted. Defendant seizes on this fact. He also cites to portions of VAWA's legislative history that indicate that hate crime statutes would be a model for interpreting VAWA [FN6]. From these two strands of legislative history, defendant argues that the animus requirement was placed in VAWA to make it clear that a plaintiff must plead facts tending to show that a defendant committed a crime of violence because of hatred against women as a group. Accordingly, defendant asserts that a litigant must plead something more than a rape or sexual assault to show the required level of animus toward women.[FN7]
For her part plaintiff argues that the gender motivation and animus elements in VAWA (and VGM) comprise a single inquiry, and that the animus provision was included to "clarify" that a violent crime must be motivated by gender. Plaintiff acknowledges that Congress was concerned that VAWA's civil rights cause of action should not federalize criminal and family law. She argues that the animus requirement was an attempt to limit the number of cases that could be brought under VAWA by making it clear that disparate impact claims would not fall within VAWA's purview and that there would have to be some showing of gender-based intent to state a cause of action [FN8]. Plaintiff asserts, correctly, that Congress invoked Title VII as a model for VAWA's civil rights cause of action, but did not want to import Title VII's disparate impact [*4]theory of liability as well.
This legislative history reflects Congress's goal of limiting the number of cases presented to federal courts. It might also have reflected some legislators' concern that VAWA's civil rights cause of action exceeded the limits of Congressional power under the Commerce Clause and section 5 of the Fourteenth Amendment - limits which turned out, in Morrison, to be VAWA's Achilles heel. In contrast neither of these concerns were of any relevance to the New York City Council when it passed VGM.
The federal courts that considered VAWA's civil rights remedy varied in their analyses of what a plaintiff must plead and prove to prevail under the act. Plaintiff and amici curiae herein cite Schwenk v Hartford (204 F3d 1187 [9th Cir 2000]) for its finding that an alleged rape or attempted rape was per se within the statute. In Schwenk, the court held:
"The fact that in this case the alleged crime was a sexual assault is sufficient in and of itself to support the existence of gender-based animus for purposes of [VAWA]. Rape (or attempted rape) is sui generis. As several courts have noted, rape by definition occurs at least in part because of gender-based animus. The psychological factors that underlie a particular rape or the conduct of a particular rapist are often complex as well as extremely difficult to determine. It would be both an impossible and an unnecessary task to fashion a judicial test to determine whether particular rapes are due in part to gender-based animus. With respect to rape and attempted rape, at least, the nature of the crime dictates a uniform, affirmative answer to the inquiry"
(id. at 1203).
While the Ninth Circuit's reasoning in Schwenk is persuasive, it was not the dominant interpretation of animus in the reported decisions interpreting VAWA's civil rights cause of action. Most federal courts required the plaintiffs to make some additional allegation of facts tending to show animus in order to state a claim under VAWA (see Reconceptualizing VAWA's "Animus" for Rape, 111 Yale L J at 1439-1448 [summarizing cases]).[FN9]
VAWA's legislative history, and its varied case law, have exerted a gravitational pull on the few decisions, all from trial courts, that have interpreted VGM thus far. In some of these decisions, courts have interpreted the animus requirement in a way that veers from the statute's remedial purpose. These decisions, often invoking the "not all rapes" language from VAWA's legislative history, have interpreted animus in VGM to require the plaintiffs to show extrinsic evidence of the defendant's expressed hatred toward women as a group (see Hughes v Twenty First Century Fox, Inc., 304 F Supp 3d 429, 455 [SD NY 2018] [the defendant's verbal abuse, violent behavior, and workplace discrimination, in addition to his alleged rape of the plaintiff, insufficient to demonstrate animosity towards women as required by VGM]; Gottwald v Sebert, 2016 NY Slip Op 32815[U], *21 [Sup Ct, NY County 2016] [complaint did not allege that the defendant harbored animus toward women as a group when he raped and behaved violently toward the plaintiff because not every rape is "a gender-motivated hate crime" under VGM]; Garcia v Comprehensive Ctr., LLC, 2018 WL 3918180, *5, 2018 US Dist LEXIS 138983, *11 [SD NY, Aug. 16, 2018, No. 17-CV-8970 (JPO)] [supervisor's assault, misogynistic insults, and [*5]intimations that the plaintiff would be treated better if she provided sexual services, insufficient under VGM because these allegations do not allege "feelings of animosity and malevolent ill will" against women] [internal quotation marks omitted]).
Other trial courts interpreting VGM, including Supreme Court in this case, have applied the "totality of the circumstances" analysis borrowed from Title VII to find that plaintiffs sufficiently showed gender-based animus by alleging actions and statements by the perpetrator during the commission of the alleged crime of violence (see e.g. Roelcke v Zip Aviation, LLC, 2018 WL 1792374, *13, 2018 US Dist LEXIS 51452, *36 [SD NY, Mar. 26, 2018, No. 15 Civ. 6284 (DAB)] [the defendant's use of "gendered terms" while assaulting the plaintiff sufficient to state a cause of action]; see also Mosley v Brittain, 2017 NY Slip Op 32447[U] [Sup Ct, NY County 2018] [cause of action stated where the defendant repeatedly called plaintiff a "bitch" and contemporaneously kneed her in the crotch]).
What the few cases that have grappled with VGM's pleading requirements have in common is the premise that some allegation of other acts or statements tending to show gender animus are necessary to supplement allegations of rape or sexual assault. Some courts, such as the Supreme Court below, have found that a plaintiff states a cause of action with very limited additional allegations; others have erected insuperable barriers to stating a claim.
We find that cases interpreting VGM have been distorted by the vestigial legislative history and case law of VAWA. While the City Council was clearly filling a gap left by VAWA's demise, it does not follow that it incorporated all of VAWA's legislative compromises into VGM. There is no stated concern in VGM's legislative history that the number of cases brought under VGM must somehow be limited. The legislative history of VGM does not invoke the "not all rapes" language from VAWA's legislative history. Accordingly, courts seeking to interpret VGM's pleading requirements are not required to follow the pre-Morrison federal case law that often struggled to determine the meaning of the animus provision in VAWA's civil rights cause of action.
However, the animus provision remains in VGM, and a statute "is to be interpreted so as to give effect to every provision. A construction that would render a provision superfluous is to be avoided" (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 587 [1998])[FN10]. As we find that VGM's legislative history provides no insight on this point, and that VAWA's legislative history and case law are inapposite, we return to the two possible definitions of animus.
Plaintiff's interpretation of the animus requirement, that it signifies "attitude or governing spirit," would render superfluous the language that comes immediately before it in the statute. As noted above, VGM defines a "crime of violence motivated by gender" as a crime "committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender" (Administrative Code § 10-1103). It is redundant to say that a crime is committed "because of gender or on the basis of gender" and that the crime is due in part because of animus based on gender, where animus is defined as an "attitude or governing spirit" based on the victim's gender. In order for animus to add meaning to the statute, and avoid redundancy, it must mean what defendant urges: malice or ill will.
However, even under this definition plaintiff's claims in the amended complaint that she was raped and sexually assaulted are sufficient to allege animus on the basis of gender. She need [*6]not allege any further evidence of gender-based animus. Defendant has conceded that the allegations herein are sufficient to show that the acts alleged were "committed because of gender or on the basis of gender." That the alleged rape and sexual assault was "due, at least in part, to an animus based on the victim's gender" is sufficiently pleaded by the nature of the crimes alleged.
Rape and sexual assault are, by definition, actions taken against the victim without the victim's consent [FN11]. Without consent, sexual acts such as those alleged in the complaint are a violation of the victim's bodily autonomy and an expression of the perpetrator's contempt for that autonomy. Coerced sexual activity is dehumanizing and fear-inducing. Malice or ill will based on gender is apparent from the alleged commission of the act itself. Animus inheres where consent is absent.
Accordingly, plaintiff has stated a claim under VGM.[FN12]
Defendant also argues that the Jane Doe allegations in the complaint, which allege, on information and belief, that three other women have accused defendant of rape or attempted rape, should be stricken as scandalous and prejudicial (see CPLR 3024[b]). CPLR 3024(b) allows for the striking of such matter that has been "unnecessarily inserted in a pleading." Relevancy is the "measuring rod" (Siegel, NY Prac § 230 [5th ed 2011]). For the reasons stated above, the Jane Doe allegations herein are not necessary to satisfy the animus requirement of VGM. Accordingly, they should be stricken from the complaint as they serve no purpose at this juncture and tend to prejudice defendant [FN13].
Accordingly, the order of the Supreme Court, New York County (Robert R. Reed, J.), entered August 15, 2018, which denied defendant's motion to dismiss the complaint and to strike the Jane Doe allegations, should be modified, on the law, to grant defendant's motion to strike the Jane Doe allegations, and otherwise affirmed, without costs.
All concur except Tom, J.P.
who concurs in a separate
Opinion.




TOM, J.P. (concurring)


I agree with my colleagues that the order of Supreme Court denying the motion to dismiss the complaint pursuant to CPLR 3211(a)(7) should be affirmed. Hence, I join the bench in the result. However, I respectfully disagree with some of the reasoning employed which, I believe, reaches beyond what is necessary, and in doing so seems to craft a new rule of law defining the applicable standard for a claim under New York City's Victims of Gender-Motivated Violence [*7]Protection Law (VGM, Administrative Code of City of NY §§ 10-1101 et.seq). Rather, I conclude that defendant's conduct and statements, as they are alleged, present a prima facie showing for CPLR 3211 purposes without the need to deem the nature of the alleged rape - coerced sex - to itself satisfy the requisite gender-based animus.
As Justice Moulton observes, we are reviewing this case against what appears to be a blank slate. City Council did not articulate how it intended the requisite gender-based animus to be construed. The relevant terminology lacks clarity as to whether a defendant, in perpetrating a crime of violence against a victim, must be motivated by animosity against the particular victim because of her gender, or that as a consequence of animosity against a gender, generally, the defendant is acting out against the victim. The distinction may seem subtle, but it may be important, and greater clarity as to the legislative intent would have been helpful.
The federal jurisprudence addressing the Violence Against Women Act (42 USC § 13981) which employed terminology similar to that in the VGM, provides uncertain guidance following the ruling in United States v Morrison (529 US 598 [2000]) striking it down on the basis that its constitutional predicate, premised on Congress's powers under the Commerce Clause, was defective. Schwenk v Hartford (204 F3d 1187, 1202 [9th Cir 2000]), decided just before Morrison was issued, provides one interpretive lens through which the terms codified both in the federal statute and VGM can be considered. The Ninth Circuit characterized defining "animus based on the victim's gender" as "the most troublesome part of the statute because animus is generally thought of as reflecting hostility.' Such is not always the case, however." The court concluded that while the coerced sexual act may manifest hostility to some degree, a "reasonable and logical approach" could combine "animus and gender motivation into a single inquiry" to reach an "emotionally motivated - as are all rapes and sexual assaults -" attack. (id.). The Ninth Circuit even posited that the defendant might be motivated by misplaced affection, an emotion which conceivably could bring a sexual attack within the reach of the federal statute. I don't see how such a semantic elasticity for the term animus makes sense. Animus equates with animosity; this strikes me as plain English. Even if "animated," the "governing spirit" alluded to in Schwenk, originally may have been cognate with animus, the meanings have diverged substantially over time. Unless "animated" is paired with "by hostility" or a similar qualification, I don't see how a concept as ambiguous as a governing spirit adds clarity to what actually seems to be a more precise meaning - hostility as a synonym for animus. In any event, the facts of Schwenk, I think, would have established the requisite gender animus without the interpretive license. There, the prison guard manifested a pattern of aggressive sexual displays, enticements and finally a physical attack against the female-oriented male transsexual, coupled with a consistent verbal sexual hostile aggressiveness. Hence, there was no need to reach further than the facts to locate the necessary gender-based animus.
In a pair of cases closer to home, so to speak, the Southern District of New York has required a much more demanding showing to survive dismissal of VGM claims. In Garcia v Comprehensive Ctr., LLC (2018 WL 3918180, 2018 US Dist Lexis 138983 [SD NY 2018]), the court dismissed a New York City VGM claim notwithstanding that the plaintiff's supervisor acted with overt hostility to her, was verbally crude in a sexual manner and seemed to insinuate that the conditions of her employment would improve if she granted him sexual favors. The facts clearly showed that the defendant was hostile to the plaintiff and expressed that hostility in gender-based sexual terms even if he did not physically assault her sexually. The court concluded, nevertheless, that the pleadings failed to sufficiently allege that the defendant's actions were motivated by animosity or malevolent ill will towards women, as distinct from gender-based hostility towards this woman. The decision in Hughes v Twenty-First Century Fox, Inc. (304 F Supp 3d 429, 455 [SD NY 2018]), describing the VGM law as seldom used and observing the relative absence of case law, also interpreted its gender animus requirement in terms of feelings of animosity and malevolent ill will towards women, as distinct from this woman. The facts, starting with a rape but followed by an extended ongoing sexual relationship which, the plaintiff alleged, became professionally necessary but remained coercive, may have [*8]had some unspoken salience in how the VGM pleadings were evaluated. However, the decision here, too, seemed to look broadly at whether the pleadings established that the defendant was hostile towards women as a gender in a collective sense. Despite the egregious conduct alleged in that case and the alleged retaliation against the plaintiff when she broke off what she characterized as a coerced sexual relationship with Fox's Charles Payne, the court dismissed the VGM claim in the absence of specific allegations that the defendant harbored animosity towards women, seemingly as a category.
I do not read the VGM law as requiring such a categorical requirement. In this I join the majority. As the majority suggests, when a defendant has perpetrated a crime of sexual violence against a woman, requiring for pleading purposes that the plaintiff also establish at least the rudiments of a broad-based hostility against women in a categorical sense, this might impose almost insuperable barriers to the plaintiff stating a claim under this law. This could effectively eviscerate the remedial goals of the VGM law.
Since I think that we can dispense with that categorical requirement, we need not reach to deem the sexual assault itself to satisfy the requirement of sexual hostility. That strikes me as a conflation of two somewhat different showings - that gender was the reason for the sexual assault, as rape obviously is, and that, additionally, an animus - a hostility - against the victim related to her gender, not the female gender generally, which motivated the sexual assault.
I think that the facts of this case, including defendant's alleged satisfaction in inducing fear in plaintiff and his threatening accusation that she had, in effect, invited his sexual aggression, amply support both showings. Hence, I am reluctant to reach as far as the majority does to equate the required animus with the lack of consent itself.
Order, Supreme Court, New York County (Robert R. Reed, J.), entered August 15, 2018, modified, on the law, to grant defendant's motion to strike the Jane Doe allegations, and otherwise affirmed, without costs.
Opinion by Moulton, J. All concur except Tom, J.P. who concurs in a separate Opinion.
Tom, J.P., Gesmer, Kern, Moulton, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: DECEMBER 26, 2019
CLERK



Footnotes

Footnote 1:The Report of the City Council's Committees of General Welfare and Women's Issues, the Mayor's Memorandum in Support, and the testimony before the Council focused on how victims of domestic violence would be able to use VGM to sue their abusers. The City Council's hearing minutes also reflect the Council's intent that transgender, gay and lesbian victims of gender-based violence were covered by VGM.

Footnote 2:Of course, the case law ended in the year 2000 with the Supreme Court's decision in Morrison. 

Footnote 3:The official position of the Conference of Chief Justices is reprinted in 1991 S Hearing 369 at 314-317.

Footnote 4:Senate Report No. 103-138 at 51.

Footnote 5:The first version of VAWA considered in the Senate in 1990 provided explicitly that a "crime of violence motivated by the victim's gender was defined as "any rape, sexual assault, or abusive sexual contact motivated by gender-based animus" (see Victoria F. Nourse, Where Violence, Relationship and Equality Meet: The Violence Against Women Act's Civil Rights Remedy, 11 Wisconsin Women's L J 1, 7 [1996], supra). Additionally, the House of Representatives in 1993 considered a draft bill stating that a "crime of violence motivated by the victim's gender" meant, inter alia, "a crime of violence that is rape (excluding conduct that is characterized as rape solely by virtue of the ages of the participants), sexual assault, sexual abuse, or abusive sexual contact" (H.R. 1133.IH, 103rd Cong § 301[e][1] [1993]; see Jill Elaine Hasday, Federalism and the Family Reconstructed, 45 UCLA L Rev 1297, 1315 n 78 [1998]).

Footnote 6:S Rep No. 103-138 at 52 n 61.

Footnote 7:Defendant is incorrect that hate crimes statutes require that a perpetrator affirmatively declare animus against a protected class at large (see e.g. New York Penal Law § 485.05[1][a]). Rather, such animus may be inferred by the nature of the attack on an individual class member (see People v Fox, 17 Misc 3d 281, 286 [Sup Ct Kings County 2007]).

Footnote 8:S Rep 103-138 at 64 ("[t]he defendant must have had a specific intent or purpose, based on the victim's gender, to injure the victim"); see also Sally F. Goldfarb, The Supreme Court, the Violence Against Women Act and the Use and Abuse of Federalism, 71 Fordham L Rev 57, 68 [2002].

Footnote 9:A number of federal courts, presaging Morrison, found that VAWA's civil rights remedy was unconstitutional (see Caroline S. Schmidt, What Killed the Violence Against Women Act's Civil Rights Remedy before the Supreme Court Did? 101 Va L Rev 501, 541-542 [2015]).

Footnote 10:It is worth noting that in enacting VGM the City Council made certain changes to the VAWA civil rights cause of action, for example, by extending the applicable statute of limitations and including misdemeanors in the definition of "crime of violence" that could give rise to a claim. By contrast, as discussed above, it incorporated the animus provision verbatim from VAWA. We are not free to ignore it.

Footnote 11:See e.g. Penal Law §§ 130.20, 130.25(1), 130.30(2), 130.35(1) and (2), 130.40(1), 130.55, 130.60(1). All of these offenses have as an element that the victim did not consent to the sexual activity in question.

Footnote 12:Other crimes of violence, such as assault, do not inherently involve gender animus and may require additional allegations to fall within VGM.

Footnote 13:Of course, this holding arises from the facts alleged in the instant complaint; such Jane Doe allegations might be appropriate in another VGM complaint arising under divergent facts. Additionally, whether evidence of such prior alleged sexual misconduct would be admissible at trial in this case to demonstrate absence of consent, or for some other evidentiary purpose, is not before us.